A. SUMNER v. E. K. BLAIR, *et al.*

1. EVIDENCE; PRACTICE; *Cross-Examination; Character of Testimony.* After a witness has been examined in chief, he cannot upon cross-examination be questioned with regard to a matter which does not tend to impeach, rebut, explain, modify, or in any manner qualify anything that he has testified to on his examination in chief; and even where the evidence sought to be introduced on cross-examination does in some degree tend to impeach, rebut, explain, modify or qualify, some portion of his testimony given on his examination in chief (and therefore might rightfully be admitted,) yet there are cases where the evidence offered on cross-examination is so weak for the purpose for which it is offered, that the court may, in its discretion, exclude it without committing such an error as will require a reversal of the judgment.

2. PRACTICE; *Excepting to Instructions.* A general exception to a whole charge is not available unless the whole charge is erroneous, or unless the charge in its general scope or meaning is erroneous. And a general exception to the refusal to give four separate and independent instructions is not available, unless all of the instructions are correct in law and should be given. Therefore, where four separate and independent instructions are asked and refused, one of which should have been refused, and where a full charge is given to the jury, which was not erroneous in its general scope and meaning, and some of which was undoubtedly correct, a general exception in the following form is not available, to-wit: "To which refusal and charge of the court the said defendant then and there duly excepted."

*Error from Atchison District Court.*

BLAIR AND NEWCOMB sued *Sumner* to recover certain sums alleged to be due the estate of their testator upon a lease of a store-room. The opinion of the court contains a full statement of the facts, and so much of the evidence and instructions as are material. The case was tried at the June Term 1871 of the district court. The plaintiffs had judgment, and *Sumner* brings the case here.

*Horton & Waggener,* for plaintiff in error:

1. The court erred in refusing to permit plaintiff in error on cross-examination to question Reicheniker. Plaintiff in error had the right to impeach the credit of said witness by proof "that he had made statements out of court contrary to what he had already testified to on the trial." 1 Greenl. Ev., §§ 462, 463, 465, 466. Plaintiff in error had the right to call the attention of the witness on cross-examination to letters written by him in reference to the matter to which he had already testified on the trial. Said witness had testified in chief that he signed the lease in April 1870, as agent for Sumner, and that he considered that at that time he had full authority to sign said lease, and that Sumner was to pay the rent of the room. The letter of said witness dated in June after the lease, and sent to Sumner, contains the following statement: "Owing to the discouragement I have had from you, and knowing that you are paying the rent for others of your agents, I do not feel that I could incur the expense myself any longer, and I hope you will assume the rent yourself hereafter." Hence it was proper and relevant to the issue, that said witness should be asked whether he wrote said letter, and if he transmitted the same at the date thereof to Sumner at Saint Louis, Mo. 1 Greenl. Ev., § 463.

2. The court erred in refusing to permit plaintiff in error to ask said witness, Reicheniker, if the contract presented to him was not the contract between himself and Sumner. Plaintiff in error claims that the introduction of this contract, and the letters written by said witness, as evidence on said trial, would have fully contradicted the said Reicheniker, and would have convinced the jury that he had testified falsely in respect to material facts in said case.

3. The court erred in refusing to give upon the trial the instructions prayed for by plaintiff in error. The general rule is, "that the extent of the agent's authority is to be measured by the extent of his usual employment;" and as it is not claimed in this case that Reicheniker ever, before

April 1870, rented any room for plaintiff in error, and had no general authority to rent rooms for him, we contend that instructions should have been given to the jury by the court. 1 Am. Lead. Cas., 568. The mere fact that Reicheniker sold machines, organs, and pianos on commission for Sumner, was not evidence that he was an agent to lease rooms, or buildings, in Atchison, and no representation of the agent as to the fact of his agency, or as to the extent of his power, is of any force to charge the principal. 11 Minn., 39.

4. The court erred in its written charge to the jury. The court assumed that defendants in error in making the lease relied upon the belief that Reicheniker was the general agent of Sumner, and was acting within the scope of his authority. Yet the evidence discloses the fact, that the lease was made on the statements of Atkins, a special agent of Sumner, the pretended statements of Atkins through Reicheniker, and the contents of the letter of Foote. Sumner was responsible only for that appearance of authority which was caused by himself, and not for that appearance of conformity to the authority which was caused only by the agent. 13 N. Y., 632.

5. It may be claimed that Sumner ratified the contract. The evidence does not show that he did. The ratification of an unauthorized contract, in order to be effectual and obligatory, must be shown to have been made with a full knowledge of all essential facts connected with the transaction to which it relates; and ignorance of, or mistake relative to, such facts, whether arising from a neglect to inquire into them or not, will absolve the principal from any supposed ratification. 12 Allen, 487, 493; 1 E. D. Smith, 175; 6 Selden, 213.

*C. G. Foster,* for defendants in error:

1. This court will not review a case on conflicting evidence, nor reverse a judgment where there is any evidence to support the material facts in the case. 3 Kas., 499; 4 Kas., 206; 5 Kas., 127, 488.

2. The defendant excepts, because he was not permitted on cross-examination of Reicheniker to introduce the written

contract between them. This was not proper cross-examination. It is incompetent, and immaterial so far as the rights of defendants in error are concerned. Nor was it error to exclude the letters written by Reicheniker to Sumner after the lease was executed. They did not and could not contradict his authority to execute the lease. 1 Greenl. Ev., §§ 462, 469.

No private correspondence between a principal and agent can affect the rights of third parties dealing in good faith with that agent, acting within the apparent scope of his authority. Story's Agency, §§ 73, 100, 105, 111, 127, 130, 133, 443; 21 Wend., 279; 22 id., 360.

3. There was no error in refusing the instructions asked by plaintiff in error; and the charge of the court was a fair exposition of the law applicable to the case.

The opinion of the court was delivered by

VALENTINE, J.: During the year 1870, A. Sumner was a dealer in sewing machines, pianos, and organs, at St. Louis, Missouri. A. R. Foote was his general business agent, or business manager, at that place. W. C. Reicheniker was a local agent of his, at Atchison, Kansas. Up to April 1st 1870, Reicheniker was agent for the sale of sewing machines only, but about that time he was made agent for the sale of pianos and organs also. Just previous to that time, one James Atkins, a general agent of Sumner's for tuning pianos, was sent by Sumner to Atchison for the purpose of ascertaining whether a suitable house could be rented for the purpose of putting in a stock of pianos, organs, etc. Atkins and Reicheniker went to E. K. Blair, one of the executors of the estate of G. W. Bowman, deceased, to see what a certain house belonging to said estate could be rented for. Blair told them that they could have the room on the first floor for $800 per year, the rent to be paid monthly in advance. They "got the refusal of the room," until Atkins could write to Sumner and get his consent. It was understood between the parties that Reicheniker's

*Statement of facts.*

mother was to take half the room and pay half the rent, and Sumner or his agents to take the other half of the room and pay the other half of the rent. Blair told Atkins that he would not rent the room to Reicheniker, as he did not consider Reicheniker responsible. Atkins told Blair that Sumner was responsible. Afterwards Atkins wrote to Sumner, telling him that he had got the refusal of the room, the terms, the price, etc. Sumner then wrote back to Reicheniker, substantially, that if he, Reicheniker, could make the arrangement, he would furnish Reicheniker with a stock of pianos, etc. A portion of the language of said letter is as follows:

"Mr. Atkins seems to think there can be some instruments sold in your place. He writes about a store that he got the refusal of at $800, and says you would write in reference to having your mother occupy it with you. If you can make some such arrangement, that will be satisfactory. We can furnish you with a stock of instruments, and will furnish you the sign."

Reicheniker showed the letter to Blair, and Blair, with D. C. Newcomb, the other executor of said estate, executed a lease to Sumner for said room, and Reicheniker signed Sumner's name to the lease as one of the parties. The bills for the rent were made out against Sumner, and the receipts for money paid on the rent were given in favor of Sumner. The bill for the rent for the month of September 1870 was sent to Sumner, at St. Louis, and a draft for the amount, drawn in favor of the Bowman estate, was returned by Sumner to Reicheniker, and Reicheniker gave it to Blair. Accompanying the draft was a letter to Reicheniker, dated at St. Louis, Sept. 9th, 1870, which reads as follows:

"Enclosed please find our check No. 5249, in full for bill of store rent. Respectfully,    A. SUMNER, *per Foote*."

This action was commenced to recover for such rent only as accrued and became due after September 1870. The action was commenced originally in a justice's court. Blair and Newcomb were the plaintiffs, and Sumner the defendant. The judgment in the justice's court was for the plaintiffs, and the

defendant appealed to the district court. The judgment was also for the plaintiffs in the district court, and the defendant brings the case here on error.

During the trial in the court below, the defendant desired to show, by cross-examination of Reicheniker, that as between Reicheniker and Sumner, Reicheniker was to pay the rent. The court refused to permit such evidence to be introduced. We see no error in this, or at most, none such as will require a reversal of the judgment. Sumner made himself responsible to the plaintiffs below, and it made no difference to them whether Reicheniker was responsible to Sumner or not. Neither had Reicheniker on his examination in chief testified as to which was to pay the rent as between themselves, Sumner, or Reicheniker. He simply testified to a state of facts which would make Sumner liable to the plaintiffs, without regard to whether he himself was liable to any one or not. In this respect the evidence sought to be introduced by the defendant was wholly immaterial and irrelevant. It was not impeaching evidence, nor was it any kind of cross-examination. It did not tend to rebut, explain, modify, or qualify, in any manner, anything that the witness had testified to on his examination in chief. But it may be claimed that the evidence sought to be introduced by said cross-examination would in some degree tend to show that Reicheniker had no authority to lease the room for Sumner, and in that way it would tend to rebut or impeach facts which the witness had already testified to. Possibly this may be true; but still it would be such weak evidence, as compared with the evidence against it, that we would not, for the supposed error of the court in refusing to receive it, reverse the judgment and grant a new trial in order that it might be given to another jury. With this evidence before the jury, the verdict would undoubtedly have been the same as it was; and it ought to have been the same. Admitting that this evidence would have shown absolutely that, as between Reicheniker and Sumner, Reicheniker was to pay the rent, and still the verdict should have been just what it

1. Cross-examination; when not allowed.

was. And admitting that the fact, that, as between Reich-eniker and Sumner, Reicheniker was to pay the rent, would have proved absolutely that Reicheniker had no authority to execute the lease, and still the verdict should have been just what it was. The contract for the lease of the house was partially made between Blair and Atkins. To make the contract complete it only needed the assent of Sumner. Sumner gave his assent in various ways. In the letter he wrote to Reicheniker, which Reicheniker showed to Blair, before the lease was executed, Sumner gave his assent. And by paying the rents promptly, as they became due, he gave his assent. And by drawing his draft in favor of the Bowman estate, for the rent due for the month of September 1870, he gave his assent. But even if he never gave his assent it does not necessarily follow that he is not liable for the rent. Admitting that as between Sumner and Reicheniker, Reicheniker was to pay the rent; admitting that Sumner never gave Reicheniker any express authority to rent a room; admitting that Sumner never gave his assent to the partial contract made between Blair and Atkins; admitting that the written lease, executed between Reicheniker and the plaintiffs below, was never expressly authorized by Sumner, and was never ratified by him, and still it does not necessarily follow that Sumner is not liable for the rent of the room. On the contrary, we should judge that the other facts would necessarily make him liable. Sumner was the absolute and exclusive owner of the pianos, organs, etc., designed to be kept in that room. Reicheniker was only an agent of Sumner's for the sale of them. He had no other business, and no use for a room except as the mere agent of Sumner. Blair knew all this. It was absolutely necessary, in order to keep a stock of pianos, organs, etc., at Atchison, and expose them to sale, that Sumner and Reicheniker should have a room to keep them in. The business could not have been carried on at all, nor the agency fulfilled, without such room. It would therefore seem that the renting of a room to keep these pianos, organs, etc., in, came absolutely

and strictly within the scope of Reicheniker's agency, within the implied scope of his authority. If so, Sumner is unquestionably liable for the rent, whether he ever gave to any person any express authority to rent the room or not, whether he ever ratified any contract for the rent of the same or not, and whatever may have been the private understanding between himself and Reicheniker, as to who should pay the rent. The evidence then sought to be introduced by Sumner was very weak. It was weak for the purpose of showing that as between Reicheniker and Sumner, Reicheniker was to pay the rent. And if that fact had been shown absolutely, such fact itself would be very weak, in the light of the other evidence, for the purpose of showing that Reicheniker had no authority to execute said lease. And even if it had been shown absolutely that Reicheniker had no authority to execute said lease, such fact would be very weak evidence, when compared with the other facts of the case, for the purpose of showing that said lease, or its substance, was not binding upon Sumner. The introduction then of such evidence as that sought to be introduced, is piling weakness upon weakness in at least a three-fold aspect. It might properly have been admitted. In the latitude of cross-examination, probably it ought to have been admitted. But courts are not always bound to admit even competent evidence. The evidence may be so weak, or so remotely connected with the main fact, that the courts have a discretion whether they will admit it or not. The affairs of men consist of a vast complication of circumstances, each owing its origin to a combination of pre-existing circumstances, and each so intimately interwoven and blended with others as to be hardly separable therefrom. This comes from the endless chain, or rather net-work, of causation. Every event that actually transpires is the result of two or more pre-existing causes; and every result in its turn becomes a co-operating cause in the production of other results. No cause and no effect can be perfectly isolated from other causes and effects. But every cause and every effect is probably only a portion

of one great and grand system of causes and effects which had its origin in the foundation of the universe, and which will continue as long as time shall last. And said system probably includes all causes, and all effects, which have ever existed, or shall ever exist. For this reason, proof of one circumstance is generally some proof of some other circumstance, and of all others that have any connection therewith, proximate or remote. But the value of the proof, as applied to different circumstances differs beyond all conception. One circumstance may be so intimately connected with another as to be almost absolute proof of the other, or it may be so slightly or remotely connected therewith as to be scarcely any proof at all. Every fact that may be proved in a court of justice is necessarily connected with many other facts which tend to modify or explain it; and each of these is again necessarily connected with and modified by as many others, and each of these by others, and so on, *ad infinitum*. But the proof of all these facts cannot be extended through a trial *ad infinitum*. A limit must be reached somewhere. Generally only the proximate facts or circumstances can be proved, if from the nature of the case these facts or circumstances can be produced. But where from the nature of the case these facts or circumstances cannot be produced, the rule is extended. In such a case the door is opened wider, for less conclusive proof. Each case must depend, to a great extent, upon its own facts and circumstances, and upon the discretion of the court. The rule being, that the best evidence of which the case, in its nature, is susceptible, must be produced. Where a plaintiff proves his case by remote circumstances, the defendant may rebut such proof by circumstances equally or more remote. But where a plaintiff proves his case by direct and positive evidence, or by proximate circumstances, the court may in its discretion refuse to permit the defendant to attempt to disprove such case by extremely remote circumstances, or by circumstances that are scarcely any proof at all. But the said evidence was offered to be introduced on cross-examination; and here, of course a wider

latitude must be allowed.   Indeed, the court may in its discretion allow, on cross-examination, the most remote facts and circumstances to be proved.   But even on cross-examination there is a limit beyond which courts are not bound to go.   There are always, in every case, facts and circumstances so remotely connected with the facts or circumstances already testified to by the witness, that the court may rightfully exclude them even on cross-examination.   In the present case, the evidence sought to be introduced should probably have been admitted.   Evidence tending to show that there was a private contract or understanding between Reicheniker and Sumner, that Reicheniker should pay for the rent of the room, may be a slight circumstance tending to show that Reicheniker had no authority from Sumner to execute said lease.   But such evidence is very weak.   It is that weak kind of evidence which lies close to the common frontier between better evidence, which the court is bound to admit, and weaker evidence, which the court in its discretion may rightfully exclude.   But whether said evidence ought to have been admitted or not, we are clear that no substantial right of the defendant below was affected by its exclusion.   If we had a reasonable doubt concerning it, we would reverse the judgment, and grant a third trial to the defendant below. But we have no such doubt.   And as no substantial right of the defendant below has been affected, we must disregard the error, if there was any error.   Civil Code, §§ 140, 304.

The court below gave certain instructions to the jury, and refused to give certain others asked for by the defendant below.   The defendant excepted to the action of the court in the following manner: "To which refusal and charge of the court the said defendant then and there duly excepted."   The defendant by this exception duly excepted to the charge as a whole, but he did not duly except to each portion of it, or to any particular portion of the same.   Now, as some portions of the charge were correct, and probably all, this exception was insufficient. A general exception to a whole charge is not available, unless

*2. Exceptions to instructions given, and refused.*

the whole charge is erroneous, or unless the charge in its general scope or meaning is erroneous: *Lansing v. Wisswell*, 5 Denio, 213; *Jones v. Osgood*, 6 N. Y., 233; *Hunt v. Maybee*, 7 N. Y., 266; *Caldwell v. Murphy*, 11 N. Y., 416; *Decker v. Mathews*, 12 N. Y., 313; *Oldfield v. N. Y. & H. Rld. Co.*, 14 N. Y., 310; *Thrasher v. Tyack*, 15 Wis., 256; *Tomlinson v. Wallace*, 16 Wis., 224; *Jenks v. The State*, 17 Wis., 665; *Moore v. Gilman*, 18 Wis., 373. What we have said with reference to the exception to the charge, is equally applicable to the exception to the refusal to charge as asked. There were four separate and independent instructions asked, and as the exception was to the refusal to give the whole of them together, and not to each separately, if any one of the instructions asked was not good law for the case, the exception is not available. In examining them we find the very first one of them not to be good law for this case. The instruction reads as follows: "If the jury find from the evidence that W. C. Reicheniker had no authority from A. Sumner to execute the lease for Sumner, then said lease was unauthorized, and *does not bind the defendant*." There was very strong evidence given of the ratification of the lease by Sumner, after it was executed; and even if it was unauthorized when it was executed, if ratified afterwards, it would certainly be binding on Sumner at the time of the trial. This instruction goes to the extent that if the lease was not binding when it was made, it would not bind Sumner at the time of the trial, although it had been duly ratified by Sumner subsequent to its execution. This was not good law for this case. Hence, the court below, after reading the first instruction asked, and finding it not to be good law, had a right to refuse all the instructions asked, as all were asked as a whole; and the exception to the refusal to give them was a general exception to the whole refusal. The judgment of the court below is affirmed.

KINGMAN, C. J., concurring.

BREWER, J.: I think the court erred in ruling out the

testimony offered, but concur in holding the error insufficient
in this case to justify a reversal.