## Morse vs. Gilman.

A complaint alleged that M. entered into a written contract with a city to do certain grading; that said contract was made by M. as the agent and in behalf of the defendant, and for his benefit; that afterwards an agreement was entered into between defendant, by M. as his agent, and one D., by which D. agreed to do said grading according to said contract, at 16 cents per yard, and defendant agreed to pay him, from time to time as the work progressed, in drafts drawn upon him by his agent M.; that subsequently, after two thirds of the work was completed, defendant, in consideration of the increased price of labor &c., and in consideration that D. would go on and complete said grading, promised to pay him for the balance thereof at 18 cents per yard; that thereupon D. completed the balance of the work according to contract; that the defendant refused on demand to pay for a certain specified portion thereof, last completed; and that D.'s claim for such work had been assigned to the plaintiff, who claimed judgment for the amount therof, at 18 cents per yard. On the trial the plaintiff put in evidence the contract between M. and the city, and a subsequent contract signed by D. , and purporting to be signed by M. as agent of the defendant, which stated that, in consideration of the letting by M. to D. of the grading specified in the first named contract, D. agreed to do the same at 16 cents per yard, payable, as the work progressed, in drafts on the defendant in New York. There was conflicting evidence as to whether the words "agent" &c., were affixed by M. to his signature at the execution of the instrument, or

were subsequently added by some other person; and the defendant testified that he never authorized M. to enter into either of the said two contracts for him. The court instructed the jury that the plaintiff could not recover against the defendant upon the written contract, and left it to the jury to determine from the evidence on that point (which was conflicting), whether there was any subsequent oral promise by the defendant to D., such as was alleged in the complaint. *Held*, that under these circumstances it was not error for the court to refuse instructions asked by the defendant, all of which assumed that the plaintiff must recover, if at all, upon the written contract between M. and D.

Where a sentence in the general charge given by the court to the jury, contained several statements which had not been proven by any direct evidence, but the facts so stated had not been controverted at the trial, but had apparently been assumed to be true by both parties, and there was no specific objection to either of those statements or to the sentence containing them, but only a general objection to a large part of the charge in which that sentence occurred with others that were free from error : *Held*, that the judgment would not be reversed on account of said statements.

APPEAL from the Circuit Court for *Milwaukee* County.

The complaint alleges that on the 8th of September, 1855, at the city of Milwaukee, a contract in writing was made between Levi J. Merrick of the first part, and the city of Milwaukee (through certain street commissioners) of the second part, by which Merrick agreed, among other things, to grade Wells street and sidewalk in front of and adjoining lots 14, 15 and 16, block 53, and Sixth street and sidewalk in front of and adjoining lots 1 and 8, block 171, and lots 11 and 12, block 53, in the fourth ward of said city; that said contract was made by Merrick as the agent and in behalf of the defendant *Gilman*, and for his benefit; that on the 26th of November, 1855, an agreement in writing was made between said defendant (by Merrick his agent,) and Ezra Dewey, by which, in consideration of the letting by said Merrick to said Dewey of the grading and work mentioned in the contract first above described, Dewey agreed to do said grading and work according to said contract at the rate of 16 cents a cubic yard, completing each street and side walk commenced; and by said agreement defendant agreed to pay Dewey, as the work should progress, in drafts to be drawn by Merrick on him, payable three days after sight, said payments to be made respectively

as the sides of the several blocks named in the contract first above described were completed; that defendant resided, at the time the contract was made, and still resides, in the city of New York or Brooklyn, in the state of New York; that on the 1st of March, 1857, he was in Milwaukee, and had an interview with Dewey about said grading and work; that at the time of such interview about two-thirds of the work was completed; that at said interview, in consideration of the great increase of the price of labor &c., and in consideration that Dewey should finish the work, defendant agreed to pay him for the balance thereof at the rate of eighteen cents per cubic yard; that thereupon Dewey did complete the balance of the work, and received from defendant, through his agent Merrick, payment for the same at the rate of eighteen cents per cubic yard, except that defendant had not paid for any of the grading hereinafter particularly described; that on the 1st of June, 1859, Dewey completed the work mentioned in the contract, by grading Wells street and side walk in front of and adjoining said lots 14, 15 and 16, block 53, and depositing 162 cubic yards of gravel; also by grading said Sixth street and sidewalk in front of and adjoining said lots 1 and 8, block 171, and in front of said lots 11 and 12, block 53, and depositing therein 5617 cubic yards of earth, making in all 5778 cubic yards of earth, for which Dewey was entitled to receive pay, at the time of the completion of said work and grading, at the rate of eighteen cents per cubic yard, from the defendant; which sum has not been paid, nor any part thereof. The complaint further alleges that on the 14th of July, 1859, Dewey, for a valuable consideration, executed to the plaintiff a written assignment of all his interest in said demand against the defendant. It also alleges a demand of payment made upon Merrick, defendant's agent in Milwaukee, and his refusal to pay; and demands judgment for $1040.04, with interest &c.

The answer denies all the material allegations of the complaint.

On the trial, the defendant moved "that the complaint be made more definite and certain by an election on the part of the plaintiff of the cause of action under which he would proceed." Motion denied. The plaintiff offered in evidence the contract first described in the complaint. Objected to, on the grounds that the contract was not properly pleaded, and that it was irrelevant. Objection overruled, and contract read. Plaintiff then offered in evidence the contract secondly described in the complaint, as follows: "November 26, 1855. In consideration of the letting of the grading of within work by the within named Levi J. Merrick to me, Ezra Dewey, I hereby agree to do the within named filling according to the contract of which the within is a copy, for the sum of sixteen cents per cubic yard, completing each street and sidewalk commenced, payable as the work progresses, to wit, in drafts on *Winthrop W. Gilman* in New York, on three days sight, payable as fast as the side of each block 169, 170, 171 and 53, are completed, and at the times of their several completion. EZRA DEWEY. I hereby agree to pay as above specified. L. J. MERRICK, agent for *W. W. Gilman.*" Thereupon defendant read and filed an affidavit of said Merrick that he never signed said contract otherwise than for himself, and that the words "Agent for *W. W. Gilman*" had been added thereto by some person to him unknown, since the execution thereof. Defendant then objected to the introduction of the contract in evidence, and the objection was sustained. Defendant then admitted that all of said contract except the words "Agent for *W. W. Gilman*" was in the handwriting of said Merrick, and plaintiff thereupon offered in evidence the whole of said contract, offering at the same time to prove that Merrick had authority from the defendant to subscribe the same for him; and the court, against the defendant's objection, permitted the contract to be read, subject to be ruled out if such authority were not shown. The record states that the plaintiff then proffered the last part of said last named contract, to wit, the part signed "Levi J. Mer-

rick, Agent for *W. W. Gilman*," "to show for itself," and that the same was read and shown to the jury against the objection of the defendant. The plaintiff then introduced evidence tending to show that the work described in the complaint was done by Ezra Dewey, and certified to by the deputy city surveyor on the 18th of June, 1859, and had never been paid for; that all the other work specified in the contract between the city and Merrick, and which was included also in the contract between Merrick and Dewey, had been, previous to the last mentioned date, completed by Dewey, and he had been paid for the same in drafts drawn by Merrick upon the defendant; that after the work described in the complaint was completed, the plaintiff and witness went together to Merrick, showed him the certificate of the deputy city surveyor above mentioned, and the assignment to plaintiff of the contract held by Dewey, and requested him to draw upon the defendant for the amount so certified to, which he refused to do. The plaintiff offered in evidence the deposition of Ezra Dewey, which was in substance as follows: "I did grading for *Mr. Gilman*, the defendant in this case, in 1857, in the fourth ward of Milwaukee, upon the streets and sidewalks in front of his lot. *Mr. Gilman* came to Milwaukee in the winter of 1856 or 1857; he said he had been upon the lot. I was engaged in filling and cutting down the lots. * * I was in Mr. Merrick's office when *Mr. Gilman* came there, and he and I talked over the contract together. He said Mr. Merrick was his agent and would see to the work, and when it was completed would draw drafts on him for the pay. The work I have mentioned was done under contract. [Here the paper above mentioned, which was read in evidence at the trial as the contract between Dewey and Merrick, was shown to the witness]. That is the contract. I never had any other contract for work for *Mr. Gilman*. * * I had a conversation with *Mr. Gilman*, when he was in Milwaukee, about the price he had been paying for the work under the contract. He agreed to give me two cents

more than the contract price. Horse feed and labor had risen, and I told him I could not live at that price; and he told me to go on and finish the contract, and get the work done, and he would give me eighteen cents. I asked him twenty cents, but he said others stood ready to do the work for eighteen cents; he was willing to let me have that. Mr. Merrick was present during all this conversation, and interceded with *Mr. Gilman* to have the work go on. * * About one half of the work mentioned in the contract, perhaps a little more, was completed when this conversation took place. I did considerable work after this, for which I got estimates before the work sued for in this action was done. I received my pay at eighteen cents on all the estimates after this conversation, in drafts on defendant, drawn by Mr. Merrick. I could not say now whether the drafts were signed 'Levi J. Merrick' simply, or 'Levi J. Merrick, Agent.' It strikes me now that Mr. Merrick signed them as agent. I frequently heard him say he was agent for *Mr. Gilman.* I saw *Mr. Gilman* only that once to have any conversation with him. * * The work mentioned in this certificate [the work described in the complaint] was done after the conversation in which defendant agreed to pay me eighteen cents a yard. * * * * I believe the contract was assigned over to *Mr. Morse* before any of the work was done that is mentioned in the certificate. *Mr. Morse* went with me to see Mr. Merrick, and the latter agreed to issue the draft to him when the work was done." On cross-examination, deponent said: "It must have been in December, 1856, or January, 1857, that *Mr. Gilman* was in Milwaukee, That is my best recollection now. I think it was somewhere between nine and twelve o'clock A. M. that we were in Mr. Merrick's office and made the agreement. It was at that interview *Mr. Gilman* stated that he had been up at the work. That was the interview in which he stated that Mr. Merrick was his agent. All the conversation I had with him took place in Mr. Merrick's presence." The defendant objected to the admission in evidence of so

much of the deposition as relates to a parol contract with the defendant to do grading at eighteen cents per yard, on the ground that that the same was inconsistent with the testimony previously adduced on the part of the plaintiff, and was immaterial, irrelevant and incompetent. Objection overruled. The plaintiff, as a witness in his own behalf, was asked: "Did you ever have an interview with *Mr. Gilman* in reference to payment for the work to recover for which this action is brought?" Objected to as "too vague and general, leading and immaterial," and because a proper foundation for it had not been laid. Objection overruled. *Answer:* "I went to New York in March, 1860; called on *Mr. Gilman* at his store, and told him I had been doing grading, and had the certificate with me, or a copy of it, for the work which had been done, with the amount figured up at eighteen cents per yard. I told him I would like to have the money. He told me his agent, Mr. Merrick, had written to him the work was not done; he took the certificate and read it, and then told me if the work was done according to contract, he would be in Milwaukee about the 1st or middle of June, and pay for the same. Don't recollect what else was said." On cross-examination, witness said: "I never saw *Mr. Gilman* until March or April, 1860. I was going to New York to buy goods, and thought I would call on him and see what the matter was. I walked in and introduced myself, and told him my name was *Morse*, of Milwaukee. Told him I had been doing some grading for him. Think I told him that I had done the work, and that the certificate was for work done under Mr. Dewey's contract. I went in to Mr. Merrick's after I came back, to see about getting the pay." The plaintiff also read in evidence (having first proved the execution thereof) a written instrument executed by Ezra Dewey, July 14, 1859, whereby he assigned to the plaintiff the certificate of the deputy city engineer above mentioned, and all his "right, title and interest in and to any claim or demand that he had against

*W. W. Gilman* for the doing of the work in said certificate mentioned, or in any contract or agreement" theretofore made by him with said *Gilman*, and constituted said *Morse* his attorney, in his name or otherwise, but at his own cost and charge, to take all legal measures which might be proper or necessary for the complete recovery and enjoyment of the claim so assigned. Plaintiff also called two witnesses who testified that they were familiar with the handwriting of Mr. Merrick, and that in their opinion the words "agent for *W. W. Gilman*," attached to his signature to the Dewey contract, were in his handwriting.—The defendant introduced evidence tending to show that the words "agent for *W. W. Gilman*" were not attached by Merrick to his signature to the Dewey contract, but that in the duplicate given to Dewey they were subsequently attached by some unknown person. He also put in evidence the following receipt: "Received of Levi J. Merrick nine hundred and five dollars and fifty-two cents, in full for grading street and sidewalk opposite lots 1, 2, 3, 4, 5 and 6 in block 171, in the fourth ward of the city of Milwaukee, and in accordance with two certificates of city engineer, one dated June 19, 1858, the other dated July 13, 1858, for 3325 —2143 yards filling. July 15, 1858. EZRA DEWEY." Mr. Merrick testified: "The work specified in that receipt was performed and paid for under and according to the written contract made between Mr. Dewey and myself. * * The defendant was in Milwaukee in the winter of 1855 and 1856, I think. He sat in my office one day, and Mr. Dewey came in to get me to go and try a justice suit. I introduced him to *Mr. Gilman.* Dewey said he supposed he was doing some grading on some streets near *Gilman's* property in the fourth ward. *Gilman* said he had been over looking around there. Dewey and I then went over to the justice's office. I heard all the conversation between Dewey and *Gilman* at that time, and what I have stated is all that I heard. I recollect some time in 1860 of *Morse* coming into my office and saying he had

just got back from New York; said he called to see *Gilman* when he was there, and that he could not get any satisfaction out of him." A deposition of the defendant was also read, in which he states that he never authorized Mr. Merrick to enter into either of the two contracts described in the complaint; that he was in Milwaukee in the fall of 1856, but not in 1857 thought he had seen Mr. Dewey there; might have had some talk with him about grading, but did not recollect; there never was anything more said between him and Dewey than that he [Dewey] was grading those lots, or doing some grading for Mr. Merrick; deponent did not remember what lots they were; he never interfered with the contract in any way whatever; never made any bargain of any kind whatever; thought he had seen *Mr. Morse* once at his store; knew nothing whatever about the matter in question in this suit."

The defendant asked the following instructions consecutively, which were all refused: "The instrument purporting to have been signed 'Levi J. Merrick, agent for *W. W. Gilman*,' is not executed as the contract of the defendant, and does not bind the defendant, and the verdict must therefore be for the defendant. 2. It must distinctly appear from the evidence that Levi J. Merrick was authorized to make such a contract as the one signed ' Levi J. Merrick, agent for *W. W. Gilman*,' and that Merrick did execute and make the contract for *Mr. Gilman* and not for himself, or the verdict must be for the defendant. 3. In order to find a verdict for the plaintiff it must distinctly appear from the evidence, 1st. That defendant made, authorized or has ratified the within contract between Mr. Merrick as his agent and Dewey, before the commencement of this action. 2d. That the within contract has been fully performed. 3d. That a specific amount of grading in the contract remains unpaid for. 4. The damages, if the plaintiff is entitled to recover in this action, must be at the rate of 16 cents per cubic yard for the grading, as specified in the written contract." The court instructed the jury as follows: " The writ-

ten contract between the city and Mr. Merrick, and that between the latter and Dewey, do not, in my opinion, create any liability on the part of the defendant; their language is such as entirely to preclude the plaintiff from making any proof under them which would enable him to recover against the defendant upon them. They are both of them the contracts of Mr. Merrick and not of the defendant, so that, unless you find some other contract in the case than these, your verdict must be for the defendant. It is claimed on the part of the plaintiff, that in the fall of 1857 the defendant entered into a verbal contract with Dewey to do the grading, for a part of which this action is brought, by which the defendant agreed to pay said Dewey for doing such grading at the rate of eighteen cents per cubic yard. It appears from the testimony that the grading was to be done on the streets adjoining *Gilman's* lots, that it is done, and that it had been ordered, and was chargeable to the lots. I think it was lawful for the defendant to make such a contract, and that if he did make it, a recovery might be had against him for a breach of it. [To which charge, the record adds, the defendant excepted.] You will consider whether such a subsequent contract has been proved. Dewey testified that such a one was made, and that it was made when he, *Gilman* and Merrick were all present, and that Merrick urged *Gilman* to enter into it; that the amount agreed to be paid was eighteen cents per yard, and that it was acquiesced in by all. *Gilman* and Merrick contradict this. You must find from the testimony that there was such a contract entered into, or the plaintiff cannot recover. *Morse* testifies to an agreement by *Gilman* to pay, made subsequent to the commencement of this action. Such an agreement, if found, would not sustain this action; it could only be of advantage as a recognition of a former contract."

Verdict for the plaintiff for the amount claimed by him. Motion to set aside the verdict and for a new trial denied, and

judgment upon the verdict; from which the defendant appealed.

*Jason Downer*, for appellant, contended, 1. That if all that part of the complaint which relates to the written contracts (and which was wholly unproved), were erased, there would not be enough left to constitute a cause of action. 2. That the court erred in permitting the contract between Merrick and Dewey to be read in evidence, and in receiving the testimony connected with it; and if it is not clear that improper testimony, admitted and afterwards ruled out, did not influence the verdict, the judgment ought to be reversed. *Haswell v. Bussing*, 10 Johns., 128; *Penfield v. Carpenter*, 13 id., 350; *Irvine v. Cook*, 15 id., 239; *Gillet v. Mead*, 7 Wend., 193. 3. The verdict should have been set aside as against the weight of testimony. 4. There was no consideration to sustain the oral promise. *Gilman* was not even proved by competent testimony to have been the owner of the lots in front of which the grading was done. 5. The court misstated the evidence to the jury, in stating that it appeared that the grading was to be done on the streets adjoining *Gilman's* lots—that it was done and had been ordered, and was chargeable to the lots. All these statements were material, and there was no proof of any one of them, except that the grading was done, and that should have been left to the jury. The other facts so stated would tend to establish the main disputed fact respecting which contradictory evidence had been given, to wit, the making of the verbal contract. The judgment should be reversed for these misstatements. *Adams v. Tiernan*, 5 Dana, 394; *Dolsen v. Arnold*, 10 How. Pr. R., 531; *Gillet v. Phelps*, 12 Wis., 398; *Benham v. Cary*, 11 Wend., 83.

*E. Mariner*, for respondent.

*By the Court*, COLE, J. All the instructions asked by the defendant below were properly refused. They proceeded upon the assumption that the plaintiff's only right of recovery

was founded upon the written contracts set forth or described in the complaint. Now the circuit court distinctly told the jury that these written contracts did not create any liability on the part of the defendant, and that it was not possible, under the proof, for the plaintiff to recover upon them. The court thus far was with the defendant. But this was not the only ground upon which the plaintiff sought to recover. It was stated in the complaint that a verbal contract was made and entered into between Dewey and *Gilman*, in March, 1857, by which *Gilman*, in consideration that Dewey would go on with the work and finish the grading, agreed and promised he would pay him for doing the balance of the grading at the rate of eighteen cents per cubic yard. It is alleged that Dewey went on and did a certain amount of work under this contract, and completed the grading. The circuit court submitted the question whether such a verbal contract was made, under proper instructions, to the jury. For the court says, in its general charge: " It is claimed on the part of the plaintiff that, in the fall of 1857, the defendant entered into a verbal contract with Dewey to do the grading for a part of which this action is brought, by which the defendant agreed to pay said Dewey for doing such grading at the rate of eighteen cents per cubic yard. It appears from the testimony that the grading was to be done on the streets adjoining *Gilman's* lots ; that the grading is done ; and that the grading had been ordered and was chargeable to the lots. I think it was lawful for the defendant to make such a contract, and that if he did make it, a recovery might be had against him for a breach of it. You will consider whether such a subsequent contract has been proved. Dewey testified that such a one was made, and that it was made when he, *Gilman* and Merrick were all present, and that Merrick urged *Gilman* to enter into it; that the amount agreed to be paid was eighteen cents per cubic yard, and that it was acquiesced in by all. *Gilman* and Merrick contradict this. You must find from the testimony that there was such a contract

entered into, or the plaintiff cannot recover." Now it is very evident that all that matter in respect to the making of this verbal contract, and its terms and conditions, if it was made, was a proper subject for the jury to pass upon in view of the evidence bearing upon it. About this there can be no doubt. And as the court properly submitted it to the jury, there was no error in so doing, or in refusing to give instructions which ignored entirely this branch of the case.

It is objected that the court erred in the portion of the charge above given, inasmuch as it assumed that certain material facts, such as " that the grading had been ordered and was chargeable to the lots owned by *Gilman*," &c. had been established by the evidence, whereas there was no proof upon those points. The court did make use of those expressions, probably because there had been no controversy upon those points on the trial. It seems to have been assumed by both parties that the grading had been ordered by competent authority, that the work was chargeable to the adjoining lots where it was done, and that *Gilman* owned the lots. Hence the circuit judge naturally used the language he did. But still, if these expressions were improper, and calculated to prejudice the defense, a specific objection should have been taken to them at the time. There was an exception taken to all that portion of the charge preceding the sentence, " You will consider whether such subsequent contract has been proved ;" but this is too general to enable us to review the particular expressions complained of, even if they were objectionable in the sense in which they were used. Certainly it cannot be pretended that the entire portion of the charge excepted to is erroneous. And unless it is, we cannot reverse the judgment upon this general exception to the charge.

We think these remarks dispose of all the material questions in the case.

The judgment of the circuit court is affirmed.