# CHARLESTON.

## POLING *v.* OHIO RIVER R. CO.

Submitted June 20, 1893.—Decided December 6, 1893.

1. DECLARATION—PLEADING—NEGLIGENCE.

A declaration for negligence is good, if it contains the substantial elements of a cause of action, the duty violated, the breach thereof properly averred with such matters as are necessary, to render the cause of action intelligible, so that judgment according to law and the very right of the case can be given.

2. EVIDENCE.

An *ex parte* map or diagram made by a witness and shown by him to be correct may be given in evidence for the consideration of the jury, not as independent evidence, but to be considered by them in connection with other evidence, so as to enable them to understand and apply it.

3. OBJECTION—PRACTICE.

To make an objection made during the trial to the admission of evidence available in the appellate court, the point must be made and properly saved by bill of exceptions. It is not enough to note the objection in the certificate of evidence.

4. DAMAGES—RAILROAD COMPANY.

As a general rule, a railroad company is not responsible for the

negligent acts of United States postal clerks or agents upon its trains.

5. DAMAGES—RAILROAD COMPANY.

A railroad company has a platform and mail crane near a post-office at which the mail train does not stop, but the postal clerk from the mail car, with a "catcher," takes in from the crane the mail pouch suspended thereon, without the train slacking speed. A person who stations himself on the company's land, near the mail crane, for the purpose of witnessing the catch, or for some other purpose of like kind, as a mere voluntary licensee is subject to the concomitant risks and danger of injury thus assumed, and the company does not owe him the duty of keeping the mail crane in suitable and safe condition. The railroad company is only liable for such wanton injury as may be done to such licensee by the gross negligence of the company, its agents and servants.

6. WAIVER—EXCEPTION.

A defendant who, after the plaintiff has given in his evidence in chief and rests, moves the court to instruct the jury to render a verdict for defendant, but, the motion being overruled, goes on with his case, will be held to have waived his exception taken to such ruling of the court.

7. ROADS.

The road-surveyor may change any county-road in his precinct with the consent of the owner of the land (Code, § 21, c. 43) and, when any road is altered, the former road shall be discontinued to the extent of such alteration, and no further, and the new one established (section 32, c. 43).

8. NEW TRIAL.

When the verdict of a jury, viewed according to the ordinary rules of considering the evidence on motion for a new trial, is plainly against the law of the case upon the facts proved, the court, on motion of the party aggrieved, will set the same aside and award a new trial; but not more than two new trials can be granted to the same party in the same cause.

9. A case in which the foregoing rules are applied, and various instructions and rulings are considered and discussed.

D. H. LEONARD and V. B. ARCHER for plaintiff in error:

I.—*Negligence defined.*—17 W. Va. 190.

II.—*Omissions not negligence entitling licensee to damages.*—Bish. Non-Cont. Law, § 446; Ray Neg. Imp. Dut. 25; 1 Shear. & Red. Neg. § 316; Pat. R'y Acc. Law, 176; Whitt. Sm. Neg. 61, 62, 63; Whar. Neg. (2d Ed.) §§ 344 and 821, 822; 15 S. E. Rep. 81.

III.—*Evidence of establishment of public road.*—32 W. Va. 7.

IV.—*Dangerous premises: Duty to licensee.*—1 Thomp. Neg.

283; Ray Neg. Imp. Duties, 21, 22 and 23; Whitt. Sm. Neg. 61.

V.—*Affirmative negligence must be proven to entitle licensee to recover.*—Ray Neg. Imp. Dut. first part paragraph 6, p. 20; 97 Eng. C. L. 731; 41 N. Y. 525, and 532-3; 66 N. Y. 243; 67 N. Y. 366; 101 N. Y. 391; 115 N. Y. 55; 120 Mass. 306; 10 Allen, 368; 92 N. Y. 289; 104 N. Y. 367; 15 S. E. Rep. 81.

VI.—*Duty to loiterer around premises for his own amusement.* —15 S. E. Rep. 81; Whar. Neg. §§ 653, 821, 822; 59 Pa. St. 129; (98 Am. Dec. 317); 29 Ohio St. 364; (23 Am. Rep. 751); 5 L. R. A. 581; 132 N. Y. 499; 71 Ill. 500; 34 W. Va. 514.

VII.—*Trespassers on track not entitled to duty even at crossing.* 65 Mich. 186; (8 Am. St. Rep. 877, and note at page 879.)

VIII.—*Plaintiff's intestate guilty of contributory negligence.*— 87 Pa. St. 405; (30 Am. Rep. 371); 62 Ind. 301; (30 Am. Rep. 185, and note 190); 34 W. Va. 538.

IX.—*Negligence of postal clerks.*—18 Am. & Eng. R. Cas. 113; 10 L. R. A. 36; 136 Mass. 553; (49 Am. Rep. 40.)

N. C. Prickett, J. II. Couch, Jr., C. E. Hogg for defendant in error cited 32 W. Va. 370; 15 W. Va. 635; 1 C. C. App. 286; Mansf. Dig. 5065; 49 Ark. 277; 8 Abb. Pr. 27; 7 N. Y. St. 245; 36 Fed. Rep. 102; 65 Ala. 566; 117 Ind. 126; 72 Ia. 614; 92 Mo. 343; Beach. Con. Neg. § 276-284; 9 Am. & Eng. Ency. L. 384, n. 1; Id. 44; 1 Patt. R'y Acc. L. 143-151; Aug. Highw. § 345; Beach Con. Neg. § 251; Id. § 45; 32 N. W. Rep. 324; Beach Con. Neg. § 244; 36 Barb. 303; 6 East 427; 46 Me. 483; 31 Ohio St. 338; 4 Am. & Eng. Ency. L. 916; Id. 909; 28 N. E. Rep. 172; 16 Am. & Eng. Ency. L. 448-452; 15 S. E. Rep. 626; 1 Whar. Ev. § 676, 677; 15 S. W. Rep. 714; 20 Atl. Rep. 541; 24 N. E. Rep. 529; 14 S. E. Rep. 217; 44 N. W. Rep. 1092; 1 Leigh 216; 15 W. Va. 300; 16 W. Va. 327; 33 W. Va. 526; 12 L. R. A. 554; 12 S. W. Rep. 810; 4 N. Y. 931; 14 S. W. Rep. 1099; 48 N. W. Rep. 998; 14 Daly 219; 45 N. W. Rep. 90; 19 Atl. Rep. 929; 20 N. E. Rep. 727; 45 Ohio St. 11; 12 Kan. 328; 52 Mo. 323; 104 Mass,

59; 37 Cal. 417; 6 Heisk. 174; 74 N. C. 655; 24 Vt. 487; 52 N. H. 528; 3 Ohio St. 172; 112 Ill. 398; 65 Cal. 629; 113 Ill. 386; 17 Mo. App. 629; 54 Conn. 171; 16 S. E. Rep. 519; 39 Am. & Eng. R'd Cas. 604; 35 Am. & Eng. R'd Cas. 321; 14 Am. & Eng. R'd Cas. 283, n.; 28 Am. & Eng. R'd Cas. 656; 42 A. & E. R'd Cas. 101; 6 A. & E. R'd Cas. 117; 57 Mo. 118; 58 Mo. 199; 4 A. & E. Enc. L. 908; Id. 915.

Holt, Judge:

This was an action of trespass on the case, brought in the Circuit Court of Jackson county on 22d March, 1892, by Poling, as administrator of C. Swain, against the Ohio River Railroad Company, for causing the death of his intestate, C. Swain, which resulted in a judgment for plaintiff for three thousand dollars, from which defendant has obtained this writ of error. The assignments of error, which were as follows, will be considered somewhat in the order made.

1. The court erred in overruling defendant's demurrer to the declaration. The declaration contains three counts, and the demurrer is to the declaration and to each count. In *Hawker* v. *Railroad Co.*, 15 W. Va. 628, it is held that a declaration against a railroad company for negligently and wrongfully killing the plaintiff's cattle on its track need not state the acts of omission or commission which constitute the negligence and wrong. It is neither usual nor necessary in this state to specify the acts or omissions of defendant which constitute the negligence. This is a matter of proof, and need not be specified in the declaration. It was not specified in the declaration in the case of *Blaine* v. *Railroad Co.*, 9 W. Va. 253, nor in *Baylor* v. *Railroad Co.*, *Id.* 270; and the declarations in these cases were held good on demurrer. The declaration is good, if it contains the substantial elements of a cause of action; and the demurrer must be overruled, unless there be omitted from the declaration something so essential to the action that judgment according to law and the very right of the cause can not be given. But the declaration must set forth the duty which has been neglected, and aver the neglect. *Railroad Co.* v. *Starks*, 38

Mich. 714. The essential ground or principal subject matter of complaint, with such matter of inducement as may be necessary to lead up to or render it intelligible, introduced and averred with time and place in the technical modes of expression suited to the action, was all that was ever necessary under the strictest forms of common-law pleading.

The first count of the declaration in the case before us avers, that plaintiff's intestate lost his life by reason of the negligence of defendant in failing to keep its mail-crane in safe condition, decedent being at the time a traveller on the highway, and without fault on his part; giving the circumstances with great particularity. Necessary implications of fact and matters of law need not be averred. It also avers, that it was defendant's duty to keep at all times a proper and safe mail-crane at Douglas station, and that by the neglect of such duty defendant caused the intestate's death; that is, defendant's duty to decedent as a traveller on the highway.

The second count avers the duty of defendant to keep its said mail-crane and appliances and railroad track safe and free from danger to the travelling public, and to all persons rightfully at or near said crane and railroad; that defendant neglected such duty; that in consequence thereof decedent lost his life while on and near the public road, and without fault on his part.

The third count is substantially the same. The averment that the father, Newman Swain, sustained damage by reason thereof, may be regarded as impertinent and therefore may be disregarded as surplusage, as he is not the plaintiff. And the declaration concludes in the usual form : "And thereupon the said plaintiff says that by reason of the premises," *etc.*, "and by force of the statute in such cases made and provided, an action hath accrued to him, as such administrator as aforesaid, to have and demand of and from the said defendant, for and by reason of the grievous wrongs and injuries in said three counts mentioned, damages to the amount of ten thousand dollars, for the uses and purposes in said several counts mentioned, and therefore he brings this suit."

82

By the statute of this state giving the right of action in such cases the action is brought by and in the name of the personal representative of such deceased person, and the amount recovered in any such action shall be distributed to the parties and in the proportions provided by law in relation to the distribution of personal estate left by persons dying intestate (Code, sec. 5, 6, c. 103); damages given not to exceed ten thousand dollars, and barred in two years (see Statute of Descendents and Distributions, c. 78).

It will be seen by section 10 that to the state shall accrue all the personal estate of any decedent of which there may be no other distributee. It may be that the state would not take; in which event it would certainly not be improper to aver that there are distributees, but not necessary, because it must be assumed that kindred exist, and it need not be averred. Cooley, Torts (2d Ed.) top p. 317. The demurrer was properly overruled.

In this case the court has certified all the evidence under section 9, c. 131, Code, from which the material facts appear to be as follows: In 1886 the defendant company built its road along the Ohio river, through the county of Jackson, where the death of Charles Swain, the subject matter of this suit, took place. There was an old county road of long standing leading from Douglas landing in Grant district on the Ohio river back to Murrayville on the turnpike. By order of 13th of April, 1886, the County Court of Jackson county "granted its consent to the said company to construct, maintain, and operate its railroad across any highway or public road in said districts of Ravenswood, Grant, or Union, in this county, when necessary to do so, but upon the following conditions: That if said railroad company shall, by the building of its said road or otherwise, obstruct any public road in this county, it shall put the road obstructed in as good condition at every crossing of said railroad as it was before the obstruction, and in all other respects according to law."

In the fall of 1886; the construction company building the railroad along the Ohio river at the point called "Lone Cedar," or "Douglas Landing," changed or the old county road, moving it down about one hundred feet, made a

crossing over the track sixteen feet wide, and graded the road from there to Douglas landing, at the river; but the road surveyor refused to receive that part of the road from the railroad to the river. In the winter of 1886–1887 the river washed away the new road next to the river. The road surveyor then had a new road made from the crossing into the old road, on the river side of the railroad, which has been used and worked as the public road, under the direction of the road surveyor, ever since. The land between the railroad and the river at Douglas landing is lying open, unfenced; and the road made by the construction company is also used as a foot path, and for horsemen, but is not worked or recognized as the highway, and, if it had ever been a part of the county road, it had in the spring of 1887 been abandoned, and thenceforward was a mere private path, used by tacit permission of Hall, the landowner.

The road made by the construction company, turning to the left, and the new road, turning to the right, separate at the railroad crossing, and come together at the landing on the beach; the distance being only seventy five yards. The crossing over the track is fifteen feet wide. On the river side of the track, and eight feet below the sixteen foot crossing, the railway company erected a platform and mail "crane," but no other building, called "Douglas Station," where, by means of a "mail catcher" on the car, mail pouches could be taken on without stopping or slackening the speed of the train. The mail pouches and the mail catchers attached to the postal cars for taking up mails without stopping the trains are furnished by the United States government mail-equipment division of the post-office department; but the mail cranes are constructed, erected, and are to be kept in good order, by the railroad companies, at their expense. The store where the Lone Cedar post-office was kept was on the hill side from the railroad, about one hundred and eighty or one hundred and ninety feet distant.

The deceased, Charles Swain, was an intelligent, sober, industrious, strong, healthy young man; twenty years old, lacking three months; living with his father, Newman Swain, about one and a half miles back in the country

from the station in question. Father and son were at the
station together on the morning of the accident. The mail
train came in about noon, and, not wishing to return until
they should get their mail, young Swain, with the consent
of his father, went hunting with a young man named
George Pickering, who sometimes acted as deputy post-
master at that place. They were hunting near by, on the
land of Mr. Hall. Near noon they quit hunting; came
down to the railroad, about seventy five or one hundred
feet down the river, below the station; walked up the track
to the platform; stayed there five or ten minutes; heard the
coming south bound mail train whistle when a half or
three fourths of a mile away; saw the train come in sight
about six hundred yards off; young Swain saying, "That
is engine No. 16."

The two young men then walked across the platform
back of the crane, next the river, and stopped on a rise or
bank fifteen feet from the upright of the mail crane. The
mail sack was hanging on the crane when they came up,
and they knew that the mail clerk on the approaching
train would attempt to catch the sack. The lower arm had
been struck by the catcher, and knocked off, about two
weeks before. When the mail car came up, the postal
clerk caught the mail pouch hanging on the crane, the
train running twenty or twenty five miles per hour, but,
on making the catch, struck the lower arm of the mail
crane with the hook of the catcher, knocking off the up-
per part of the lower arm, and hurling it forward, and
around against the left breast of young Swain with such
force that he took a few steps, fell and died in a few sec-
onds. The piece of the lower arm broken off, and thrown
around and back against young Swain, was large at one
end, tapering to a feather edge at the other, which was the
explanation given by a witness of the direction in which
the blow by the catcher threw it.

The decedent had no business with the train; was there
simply as a looker-on at the passing mail train. He was
not traveling on, or in any way using, the county road.
But one of the questions of fact, about which a considerable
part of the testimony was given, was whether the point,

fifteen feet behind the upright part of the crane, to which
he walked as the train approached, and where he was
standing by the side of Mr. Pickering when he (Swain)
was struck and killed, was in the county road or not. It
was within the railroad company's right of way. There is
a diagram in evidence which shows with great precision
where the decedent stood when killed, with reference to
these two roads. He was not within the thirty feet of the
road running from where the road crosses the rails to the
right to the landing at the river, but was within the thirty
feet of the road turning to the left, and running to the river
at the same point, being eleven feet from the center of the
thirty foot right of way, but was not within the thirty foot
right of way of the road turning to the right.

There is also a diagram showing the location of the mail-
crane, and also a great deal of evidence as to whether it
was a safe and proper appliance. In the present attitude
of the case, taking it most strongly for plaintiff, and con-
fining it to plaintiff's evidence, after the verdict of the jury,
we must regard it as not an appliance in complete and
proper order, to the full measure of what was required on
behalf of anyone to whom the company owed the duty to
see that such appliances under their own control were in
full and complete and proper order; otherwise, it would
not have been possible to strike the lower arm of the crane
with the hook of the catcher. The thing itself speaks,
and shows that if the distance between the arms had been
greater, or the catcher had been shorter, it would have
been impossible for the catcher, no matter at what angle
raised, to have struck the lower arm; but it can not in any
proper sense be called a nuisance. It is also shown that if
the catcher on the mail car is raised to a horizontal position,
or anything near that, it passes through without danger.
This is also shown by the very many times it was success-
fully used without accident, although the lower arm had
been struck about two weeks before. The mail agent who
made the catch was a young man without experience, who
commenced on October 8, 1888, eighteen days before the
accident happened; and in the second week of his run-
ning on the train the accident occurred. The evidence

also shows that the mail crane was on the concave side of a curve, and that there was a loose joint, and there had been a slight washout under the track at that point; both having a tendency to swing the train towards the crane.

But one instruction was asked by and given for plaintiff, and to this defendant excepted. For defendant the court gave instructions Nos. 1, 2, 3, 6, 7, and 8, but refused to give defendant's instructions Nos. 4 and 5, and defendant excepted. Plaintiff's instruction is in the words and figures following :

"The jury are hereby instructed that if they believe, from the evidence in this case, that the decedent, C. Swain, at the time that he was struck by the piece of the arm of defendant's mail crane, was on the highway leading from a point called 'Douglas Landing' to another point on the Murrayville road, then at the time said Swain was so struck he can not be considered or held to have been a trespasser on defendant's premises." The following are the instructions which were given for defendant :

"No. 1. The jury are instructed that it is the duty of the plaintiff to make out his case by a preponderance of the evidence.

"No. 2. The jury are further instructed that negligence is the doing of something which, under the circumstances, a reasonable person would not do, or the omission to do something in discharge of a legal duty which under the circumstances, a reasonable person would do, and which act of commission or omission, as a natural consequence directly following, produces damages to another.

"No. 3. The jury are further instructed that if they believe, from the evidence, that the deceased, C. Swain, was using the railroad track or its right of way as a foot path for his own convenience, and that he was not so using said track or right of way at a lawful crossing, and that the said C. Swain received his injury, while he was so using said track or right of way at a place other than a lawful crossing, by the breaking of a mail crane belonging to the Ohio River Railroad, that the plaintiff can not recover in this case, unless they believe, from the evidence, that the defendant was guilty of wanton or gross negligence.

"No. 6. The jury are further instructed that the defendant is not responsible for the negligence of the postal clerks on its postal cars on its road.

"No. 7. The jury are further instructed that if they believe, from the evidence, that the breaking of the lower arm of the defendant's crane was caused by the failure of the postal clerk to properly adjust the mail catcher on the postal cars for the purpose of catching the mail sack, then the defendant is not liable, and they should find for the defendant.

"No. 8. The jury are further instructed that if they believe, from the evidence, that the deceased, C. Swain, was a person in full possession of his senses of seeing and hearing, and also in full possession of his mental faculties; and if they further believe, from the evidence, that at the time of the accident the said Swain knew that there was danger in standing about the mail crane; and if they further believe, from the evidence, that said mail crane, with the mail sack adjusted thereon, was in plain view, and seen by said Swain; and if they further believe, from the evidence, that the defendant knew that a train of cars was approaching, or would soon approach, the place where said crane was standing; and if they believe, from the evidence, said Swain knew the mail sack would be caught, or an attempt would be made to catch it, by the mail clerk on the train; and if they further believe, from the evidence, that said C. Swain visited the vicinity of said mail crane from curiosity, or for personal convenience, without any reasonable duty calling him there—that in such case, even although they may believe, from the evidence, that at the time of the accident the deceased was standing in a public road, yet he was guilty of contributory negligence by so standing near a known place of danger, and the jury should find for the defendant."

The following are the instructions which were asked for by defendant and refused by the court:

"No. 4. The jury are further instructed that if they believe, from the evidence, that the death of C. Swain was caused by the breaking of the lower arm of the mail crane of the defendant; and that if they further believe, from the

evidence, that the breaking of the crane was the result of the lower arm being too near to the upper arm—that in such case the failure to construct such crane with the lower arm further from the upper arm, if it was a duty devolving upon the defendant to so construct, such failure to construct is only an omission of duty, and, if it is such omission of duty, the plaintiff can not recover, under the evidence in this case.

"No. 5. The jury are further instructed that if they believe, from the evidence, that the deceased, C. Swain, was at the time of his death on and about the defendant's platform and mail crane, not as a passenger, or upon any business connected with the railroad company, but merely there for his own convenience or curiosity, or for personal enjoyment, the defendant owed to him no active duty to look out for his protection; and hence, if he was killed by the breaking of the mail crane caused by a passing train, the plaintiff can not recover on the theory that the defendant has been guilty of negligence by a failure to discharge towards him a legal duty."

The order of the County Court of Jackson, as we have seen, permitted the railway company to construct, maintain, and operate the railroad across this public road on condition that, if they obstructed it, it should put the public road in as good condition at the crossing as it was before. But the road made by the company from the crossing down to the landing at the river was not accepted; but Mr. Peters, the road-surveyor of the district, notified the parties making it that he objected to it at that place, and would not receive it; nor was it ever received or assented to by him or the county authorities; and after it washed away next to the river, in a few months thereafter, the road from the crossing turning to the right, and going down to the landing, was made by Mr. Hall, the landowner, with the sanction of the road surveyor, and has been worked and used and kept in order by the county as the public road ever since, which includes the time of the accident.

By section 21, c. 43, Code, the surveyor may change any county road in his precinct with the consent of the owner of the land, and, "when any road is altered, the former road

shall be discontinued to the extent of such alteration and no further, and the new one established" Code, s. 32, c. 43. So that, if the road turning to the left from the crossing, and running to the river, had ever been a part of the Murrayville and Douglas Landing road, it had been changed by the road surveyor, and thereby discontinued, by the alteration; and the road turning to the right had been thereby established; and was the public road at the time of the accident. Yet the left-hand road was still used by horsemen and footmen; and where the young man stood when struck was on it, giving it a width of thirty feet, and was only eleven feet from the edge of the true public road —the one turning to the right.

Under this state of the evidence, the court can not say that plaintiff's instruction should have been refused as being abstract, and wholly without evidence on the point; for the two roads coincide at the crossing, and coincide in part opposite where the decedent was standing.

Second error assigned by plaintiff: In admitting the parol evidence of Dr. Davis and others to prove that deceased was in the public road at the time of the accident.

It is true that mere user of a road will not make it a public road, under Code, s. 31, c. 43. The user must be accompanied either by an order of the County Court recognizing it in some way as a road, or the road must be worked by the road surveyor as such. Still, there was an attempt in this case to show a recognition in both these ways; and I do not think it was error to permit witnesses to testify that it was made by the construction company as a substituted part of a public road, and was used by the public as such for sometime.

Third error assigned by plaintiff: In permitting the witnesses D. R. King and others to testify from the plat, Exhibit A. with the record. This was a map or diagram of the place of the accident, showing the relative positions of the railway mail crane, roads, and crossing, and the place where the accident happened, where the young man stood. Though *ex parte*, it was shown to be correct by a witness who made it, and must have been useful for the understanding of the testimony, and almost indispensable

to many of the witnesses in making their testimony readily intelligible to the court and jury. It was used by the witness who made it, in order to explain and apply his own testimony, and make it capable of being understood. It was not offered or used as independent evidence, but for this purpose, and no other. Such use is common in practice, and clearly legitimate. *Curtiss* v. *Ayrault*, 3 Hun 487; *Brown* v. *Tile Co.*, 132 Ill. 649 (24 N. E. Rep. 522). "It was received for the consideration of the jury, so far as it was shown to be correct, in connection with other evidence, and to enable them to understand and apply it, and not as independent evidence." See, also, *Hoge* v. *Railroad Co.*, 35 W. Va. 562–564 (14 S. E. Rep. 152). It is one of the appropriate methods of bringing before the eye of the jury a representation of the things and scenes in which the fact took place, and as an aid in understanding and applying the evidence. See 1 Greenl. Ev. (15th Ed.) § 82, note.

Fourth error assigned by plaintiff: In admitting illegal evidence, and excluding competent evidence, against the objections of defendant, "as noted in the transcript of the evidence." Under section 9, c. 131, all the evidence, and not the facts, is certified. The transcript of the evidence is voluminous, and it shows many exceptions "noted" to evidence during the progress of the trial; but no bill of exceptions was taken to such rulings, and the exceptions are therefore taken as waived. It would involve great labor, indeed, to go over a verbatim report of all the evidence as given in, and pick out and consider all exceptions "noted" to questions asked and answers given, permitted, or overruled. The law does not contemplate so easy and compendious a mode of bringing up for review all such rulings of the lower court, nor one so general and indefinite in specification, and involving so much labor on the part of the appellate court. See *Gregory's Adm'r* v. *Railway Co.*, 37 W. Va. 606 (16 S. E. Rep. 819). It must in some way be so set out as to be capable of being easily found and identified.

I have already given the main facts of the case with some fullness of detail, and because the plaintiff comes to us with a verdict in his favor, from his evidence alone, except

where the defendant's evidence is not contradicted. On one point—a vital one, as the counsel regard it—to wit, the place with reference to the public road, where decedent was standing when he was killed, there is perhaps some evidence tending in a very slight degree to prove the plaintiff's claim in that respect. So, at least, I have regarded it.

The principles and rules of law to be applied are involved in the question : Did the railway company owe to decedent any duty the violation of which by the company was the direct and immediate cause of his death, and what points of law, with reference to the rulings complained of, spring up out of the application to the facts of such principles and rules? The principles may be said to be few and simple (the common principles of right and wrong, public policy, and general convenience of the day); but the rules based upon them, and formed by generalizing, more or less, the points decided in the very many cases, are quite numerous and complex. These rulings relate to the instructions asked by defendant, and refused; its motion for a verdict on plaintiff's evidence, and for a new trial, both overruled. These, as far as may be, will be considered together.

The postal clerk who made the catch from the running train was in the service of the United States government; was not in the employ of defendant. He was not the servant or agent of the company; not hired or paid by them, nor subject to their control. A postal clerk is not an employé of the railroad company (*Mellor* v. *Railroad Co.*, [Mo. Sup.] 14 S. W. Rep. 758); and a railroad company is not responsible for the negligent acts of postal clerks or agents upon its trains, *Muster* v. *Railway Co.*, 61 Wis. 325 (21 N. W. Rep. 223) except, under circumstances which need not now be discussed, *Snow* v. (*Railroad Co.*, 135 Mass. 552) and the reason is, the postal clerk is neither the servant nor the agent of the railway company; it has nothing to do with his selection or employment, has over him no supervision or control, and has no power to discharge him; so in no sense could his act be said to be the act of the company.

The decedent was a voluntary licensee, one without invitation, standing on the side of the defendant's right of way

as a trespasser or licensee, for some purpose of his own—most likely to see the catch made by the passing mail train, or to wait for his companion to get the sack thrown off; evidently not as a servant of the company, for he was in no wise in their service; not as an expectant passenger, for the train did not stop; not to get the sack, for he had nothing to do with the post-office or mail business; not as using the county road for any purpose, for he was not in it, and had not been using it there that day, and the place to get his mail for which he was waiting, and his direction of travel, was on the other side—the post-office, one hundred and eighty feet away; not as a mere trespasser, unless in a technical sense, for it is fair to infer that he was there with the tacit consent of the company, though it does not appear that it was with their knowledge.

In *Woolwine's Adm'r* v. *Railway Co.*, 36 W. Va. 329 (15 S. E. Rep. 81) it was held that such a licensee subjects himself to the risks and perils incident to the place he is in as such licensee, and that no duty is imposed upon the owner or occupant to keep the premises in safe and suitable condition for such person; and the owner is only liable for such willful or wanton injury as may be done to the licensee by the gross negligence of the railroad company, its agents or employes.

Was there gross negligence on the part of the company in this case? For such contention there is no foundation that I can see, unless the mail crane was of such a character as to be a common nuisance to those using, or waiting to use, the highway, at the crossing. We have already seen that such was not his business there. He was not in the road at the time, had not used it, and the only evidence—that of his companion—shows that as he stepped back there fifteen feet from the mail crane, to what was evidently supposed to be a safe place, to see the mail train go by, and, we may reasonably infer, to see the catch made of the mail pouch. But, from this evidence, can we fairly say that the mail crane, which it was the duty of the company to put up properly and keep in repair, was a common nuisance?

Gross negligence having been branded as an unmeaning,

vituperative epithet, the modern tendency is to discard its use, and treat everything under the head of ordinary care, and its correlative, simple negligence. But it would be remarkable to find a few simple and useful gradations in almost all things, and yet none in negligence. It may not be generally useful in practice in the present day; but that is because of the multiplicity of the degrees of negligence, and the unevenness of the grades and subdivisions, and not because there is no such thing as gross negligence. *Railway Co.* v. *Arms,* 91 U. S. 489; *Railway Co.* v. *McDaniels,* 107 U. S. 454 (2 Sup. Ct. 932.)

To say that it is but the violation of the duty of ordinary care required in the case is but putting two things of different degrees in one class, by using "ordinary care" as a generic term; and the term "ordinary care" has still to be graded and divided by the jury by the conduct of the prudent man under the circumstances, putting themselves in his place, and measuring what is required of him by such circumstances, before it can be applied. Thus supplemented by a sliding scale, and thus made adaptable to measuring in such practical, but indefinite way, the care required, it is found, no doubt, to be more useful and convenient in the vast majority of modern cases. Nevertheless, this broad and simple classification is, with us, still regarded as useful and convenient in two or more classes of cases. The terms "utmost care" and "slightest negligence," "slight care" and "gross negligence," are still applied, especially in two classes of cases: The former, to common carriers of passengers, as in *Farish* v. *Reigle,* 11 Gratt. 697 (decided in 1854, forty years ago); *Railroad Co.* v. *Sanger,* 15 Gratt. 230—both still leading authorities with us. In this class of cases the common carrier owes to the passenger the duty of exercising more than ordinary—the utmost—care. The latter, to voluntary licensees and trespassers. *Woolwine's Adm'r* v. *Railway Co.,* 36 W. Va. 329 (15 S. E. Rep. 81); *Spicer* v. *Railway Co.,* 34 W. Va. 514 (12 S. E. Rep. 553). In this class of cases the owner and occupant does not owe the duty of exercising ordinary care; but slight care, so as not to cause wanton injury, and thereby be guilty of gross negligence, that discharges the only duty he owes.

Where one is liable for the slightest negligence—for example, to a passenger—he must take the greatest care. He will be liable for such injury from negligence as the most thorough and conscientious diligence could have foreseen and prevented. *Carrico* v. *Railway Co.*, 35 W. Va. 389–399(14 S. E. Rep. 12). When one inflicts upon a voluntary licensee a wanton, reckless, heedless injury, he is guilty of gross negligence, and is liable. See *Woolwine's Adm'r* v. *Railway Co.*, above. A mere sight seer, on no other business, goes into any one of the large modern factories in operation throughout the civilized world. It requires great care and watchfulness on his part, unfamiliar as he is with such places and things, to avoid danger and escape injury, although the place is reasonably safe and fit, and everything is carried on with due ordinary care; but unless there is wanton injury, the result of gross negligence, the owner is not liable. Why? The owner has set no trap for him; he did not induce, but only permitted, him to come; he is not there on business; the place and appliances belong to the manufacturing company; it was fixed for them and their employes; it suits them; by their knowledge and skill they avoid danger, though to those unskilled and unfamiliar it may be dangerous—dangerous to any one in fact; but it was not made for, and is not carried on for, any purpose with which the licensee has anything to do; if the injury is not wanton, the negligence is not gross, and the company is not liable, for it owed him no other duty, and that one has not been violated.

As appears by the event in this case a step or two further to the right would have put this unfortunate young man in the highway, and, as it happened, out of harm's way. But I do not see how he can be charged with contributory negligence, except in a very technical or artificial sense. No one would have been likely to anticipate or foresee the danger. He merely assumed the risk, whatever it might be. The risk, perhaps, was not less of his being struck by lightning at that place during a thunder storm; so that I do not see how it can be said that he was guilty of contributory negligence in any proper, or at least natural, sense.

If he had been a traveller at that place, just a step or two on the company's right of way, and off the public road, and perhaps a technical trespasser, but a traveller, waiting to cross the track at the crossing, I am not prepared to say that the company would not have been liable, because they would then have owed him the duty of ordinary care. See Beach, Contrib. Neg. § 254; *Sanders* v. *Reister*, 1 Dak. 151 (46 N. W. Rep. 680); *Murray* v. *McShane*, 52 Md. 217. Or if he had been in the highway, where he had a right to be, without business, at a safe distance from the passing train, and the mail crane was so imperfect and dangerous as to be a common nuisance, being so close to the public road, then they would be guilty of gross negligence, and liable; but in our view this case is neither of these. Besides, it may be said that there was in this case an intermediate efficient cause of the injury between it and the having there the imperfect, and in some degree dangerous, mail crane.

Did this mail crane unlawfully obstruct or render dangerous this highway and crossing to the extent of making it a nuisance? The only description made of it, and criticism made upon it, on the part of plaintiff's witnesses are made by Mr. Vosburg, evidently a correct and very intelligent man, a civil engineer by profession, who was on the ground, and examined and made his measurements thirteen months after the accident happened, who says, in constructing cranes: "I have no experience at all." "What do you know about them?" "Not anything at all." He said, that he had observed others, but this was the only one he ever measured or directed his attention to particularly;— that you could not change the distance between the arms, parallel, without changing the length of the mail pouch; —that the post-office department made the specifications for both sacks and arms, and furnished the pouches and the catcher;—that if the sack is changed and made longer, the outer end of the lower arm must be lowered, and the fastened end ought to be. In answer to the question, "Is it possible for a mail clerk to make these catches in the condition in which you found it?" answered, "Possibly? yes, sir; because the evidence is that he made them for a long time while in that condition."

The evidence on the side of defendant on this point is that, with ordinary skill—and it took but little—the catcher can be raised parallel with the floor of the car, with the rod that runs between the doors from side to side; that, when brought to about that position, there is no danger of striking either the lower or upper arm of the mail crane, but, if the mail clerk should delay elevating this catcher into proper position until he was too near the crane, then he would be liable to strike the lower arm in putting it into position. For diagram of mail crane, see Postal Laws and Regulations 1887. By change in length of mail pouches, we may infer the lower arm was dropped at the outer end about thirteen inches out of a line parallel with the upper arm; and this made the striking of the lower arm with the catcher possible. I do not think this crane could be pronounced a nuisance; but, if it were such, the decedent was not in the highway, but on the defendant's right of way—a place he selected with his eyes open, with all his faculties unimpaired and in full play, for the purpose of seeing the catch made, or for some purpose of like kind.

Defendant's Assignments of Error Nos. 5, 6, 7, 8, and 9. Exception No. 7, to the giving of plaintiff's one instruction, have already been considered. It can not be said that there was absolutely no evidence tending in any appreciable degree to show that the decedent was not a trespasser or voluntary licensee on defendant's premises; for he was standing in a place that had once been dug and used as a road, though afterwards altered by the road surveyor, and thus discontinued. For a still stronger reason, defendant's motion to direct a jury to return a verdict for defendant was properly overruled. Where the party is guarantied the right of trial by jury, especially in cases of negligence, which are, for the most part, peculiarly cases of fact, and therefore peculiarly within the province of the jury, such direction is only proper in a few cases so plain that there is no room for two opinions. It stands on ground wholly distinct from a motion for a new trial; though the latter, in one of its reasons, often comprehends the former—as where the case is wholly without evidence as to some essential fact. That it saves time, trouble, and expense, is sometimes all that can be said in its favor.

But here the defendant waived this exception by going on with his case. If he intends to save it he must submit his case to court or jury without further evidence. He (the defendant) has appealed to the court to end the case as matter of law then and there for defect of proof. He can go to the jury at that stage, his motion being overruled, or he can waive his exception, and go on with the case, take his chance before the jury, and, if losing, move for a new trial, which is more comprehensive; but he is not permitted to take all these chances, and in addition skip his own evidence, which may have supplied the defect in plaintiff's case, put himself back where plaintiff rested, and he made his motion, as if he had taken the hazard of submitting his case at that point.

The six instructions given for defendant he can not complain of, and they need not be considered, except as to any bearing they may have upon the question of the refusal of instructions Nos. 4 and 5. As a general rule, it may be affirmed that omissions, unless when involving the non-performance or mal-performance of a positive duty, are not the subject of suit. Whart. Neg. § 82. But otherwise, when the omission is the defect in the discharge of a legal duty; for it is of the essence of negligence to omit to do something that ought to be done. *Id.* § 83. Instruction No. 4 was properly refused. If the negligence of the defendant in failing to construct a proper crane was the proximate cause of the injury to the plaintiff, and it owed the decedent the duty to see that it was a safe appliance, it is of no consequence whether it be omission or commission. See *Harriman* v. *Railway Co*, 45 Ohio St. 11 (12 N. E. Rep. 451) and other cases cited; Beach Contrib. Neg. § 25, note 2. It depends on the question whether defendant owed decedent any duty or not, under the circumstances; and although the thing complained of may help to determine that question by reason of its nature, as that it was an omission, yet that does not furnish the true criterion of liability, and the plaintiff might still be entitled "to recover under the evidence in this case." No hypothetical state of facts being stated, this instruction treats the question of negligence as a question of law, to be determined by

the court "under the evidence in the case," or as a question of law and fact, to be thus determined by the court, and for that reason also is bad.

Plaintiff's instruction No. 5 was also properly refused. While apparently putting the fact of decedent being on or about defendant's platform and mail crane as the hypothetical fact, *inter alia*, out of which the court is to tell the jury the given legal point arises, such fact is really assumed; and the fact that he was not there as a passenger *etc.*, but for his own curiosity *etc.*, is the real hypothetical fact of the instruction. "About defendant's platform and mail crane?" Where is that? The counsel on both sides have made a difference of ten or twelve feet in the location of the county-road, near and about the platform and mail crane, the crucial point in the case; and both locations are equally comprehended in the fact assumed by the court, and may be said to be the one controverted fact. In such a case, "around and about" is also too indefinite. If the instruction was intended to raise the point that it made no difference whether the place where the young man stood was on the company's right of way, and not in the county road, or in the county road, and not on the right of way, then it is obscure and confusing, and should have been framed differently. *Mayor etc.* v. *Poultney*, 25 Md. 34; *Railway Co.* v. *Snyder*, 24 Ohio St. 678. See, also, *Morse* v. *Gilman*, 18 Wis. 385 ; *Hughes* v. *Monty*, 24 Iowa, 501—all cited to sections 466, 467, Wells, Law & F. And an indirect assumption of this fact, as in this case, is condemned on the same principle; for it also throws the weight of the case upon a part of the evidence or facts, instead of putting it upon all. See Wells, Law & F. § 477; *Roots* v. *Tyner*, 10 Ind. 87, cited. These things being believed from the evidence, the jury is told the defendant owed decedent no active duty to look out for his protection. Then the instruction adds;—and hence, if he was killed by the breaking of a mail crane caused by a passing train, the plaintiff can not recover on the theory that the defendant has been guilty of negligence by a failure to discharge towards him a legal duty."

I think the instruction, as a whole, calculated to confuse

and mislead the jury, and, if not argumentative, it suggests the implication that plaintiff may be entitled to recover on some other ground than that of being guilty of negligence. It also involves the question of active duty, which has already been considered. The defendant might be liable for an injury to one traveling in a highway, directly caused by a nuisance close by, without reference to the character of the duty, whether active or passive. He may put up some structure so near as to render the lawful use of the public road dangerous. He, it may be said in the first place, owed the passive duty not to put it up, and when he put it up he violated that duty by an act of commission. Second. Being up, he owed the active duty to look out for and guard against the party's injury from such nuisance. Besides, instructions No. 3 and No. 8 covered the same state of facts in all material points, and were given being based on the law as laid down in *Spicer* v. *Railway Co.*, 34 W. Va. 514 (12 S. E. Rep. 553) .

I regard this case as ruled by the law as laid down in *Woolwine's Adm'r* v. *Railway Co.*, 36 W. Va. 329 (15 S. E. Rep. 81) and the case, just cited, of *Spicer* v. *Railway Co.*, and do not think it can be distinguished as to the controlling elements of law and fact, or withdrawn from their decisive influence.

I need scarcely add, from what has already been said, that the facts, taken at their strongest, according to the rules in such cases, do not justify the verdict. The evidence of plaintiff, taking it all as true, with all fair and reasonable inferences, together with the uncontradicted evidence of defendant, proves nothing from which the jury could reasonably infer that defendant had violated any duty which it owed to plaintiff's intestate, or was guilty of any negligence for which plaintiff is entitled to recover, but is plainly insufficient to warrant such finding. The verdict is against the law of the case upon the facts proved, and must therefore be set aside. Judgment and verdict set aside, and new trial awarded. Reversed and remanded.

## On Rehearing

This unfortunate young man, when so unexpectedly struck by the sliver from the lower arm of the mail crane,

was standing fifteen feet from, and back of, the upright supporting the arms, and not in any road, but on the land or right of way of defendant. The left-hand road running from the railroad crossing to the landing on the Ohio river was made by the construction company, was not only not received or adopted as a part of the county road by the road-surveyor, but, on the contrary, was expressly refused and repudiated, and soon after was washed away at the river. The landowner, by the sanction and direction of the road-surveyor, made what is called the "right-hand" road, which was adopted and worked as the only road leading from the crossing to the river in existence at the time of the accident; and in this he was not standing, but on the land of the defendant. He was not there on the invitation of defendant, or on business of any kind with it; not to become a passenger, for the train did not stop; and he was not in defendant's employ. He was there simply as a looker-on, to see the mail train go by, and the mail agent make the flying catch of the mail pouch. Therefore he was a mere trespasser, or, at best, a voluntary licensee.

The company made no change to endanger him after he came. It owed him no duty that was violated. For although, in the present attitude of the case, I take for granted that the mail crane was not of the best construction, but must have been in some respect defective, yet it was not a public nuisance; for it had been frequently used with safety, and successfully, both before and immediately after this accident, without harm or danger to any one, unless it was dangerous to the one using it. It was a case in which the unexpected happened, and its liability to happen could not be forseen, and is only proved by the actual happening [see *Richards* v. *Rough*, 53 Mich. 212 (18 N. W. Rep. 785) *Sjogren* v. *Hall*, 53 Mich. 274 (18 N. W. Rep. 812) Cooley, Torts, 92, note 1] and therefore a case of damage without injury; at least, so far as defendant is concerned. Moreover, the one who made the catch, knocking the sliver off the lower arm of the mail crane, was the mail agent of the United States government, not in the employ or subject to the orders or under the control of defendant, and, if there was any negligence at all, it was his inter-

vening and breaking the causal connection; for, in law, it is not the remote, but the proximate, cause which is looked to and regarded as the real cause. See *Washington* v. *Railroad Co.*, 17 W. Va. 190. That these are the facts as they indisputably appear in this record, there is, in my opinion, no sort of doubt, and, from the application of the appropriate principles and well-settled rules of law, it is equally clear that the defendant did not appear to be liable, and a new trial should have been granted; for it has long been as much the duty of the court, in certain cases, to set verdicts aside, as it is the duty in general, of juries to find them. Verdicts like this include legal propositions, as well as propositions of fact, and the power must reside somewhere to grant new trials; for it is absolutely essential to justice that there should, on many occasions, be opportunities of reconsidering the cause by a new trial. See *Bright* v. *Eynon* (1757) 1 Burrows, 391, 394.

Here the verdict is against the law of the case upon the facts proved, and is therefore set aside, and a new trial awarded.