## CHARLESTON.

HANNUM v. HILL, *et al.*

Submitted January 27, 1902.   Decided December 6, 1902.

1.  CONTINUANCE.

     It is a settled rule of this Court that the granting or refusing a continuance of a cause is within the sound discretion of the trial court and that a judgment or decree of such court will not be reversed for that reason, unless the action of the court was clearly erroneous.   (p. 169).

2.  ERROR—*Instructions.*

     Error in giving or refusing to give certain instructions, or in admitting or refusing to admit certain evidence affords no ground for reversing a judgment, when it is evident that the plaintiff in error could not have been injured thereby.   (p. 179).

3.  DAMAGES.

     In an action for personal injuries received by reason of the negligence of a telephone company in permitting its wire to be stretched so low down over the public highway as to be caught by a horse's feet in passing, it is not competent to prove the condition of the wire at that point months subsequent to the time of the injury complained of.   (p. 176).

Error to Circuit Court, Grant County.

Action by W. H. Hannum against W. B. Hill and others. Judgment for plaintiff, and defendants bring error.

*Reversed.*

F. M. REYNOLDS, L. J FORMAN and E. L. JUDY, for plaintiffs in error.

J. N. McMULLEN, FLOURNOY & SMITH, and M. W. GAMBLE, for defendant in error.

McWHORTER, JUDGE:

In an action for trespass on the case W. H. Hannum recovered a judgment against the Petersburg and Franklin Telephone Company, a partnership composed of various parties, for four thousand, five hundred dollars for personal injuries to plaintiff. The defendants obtained a writ of error from the said judgment. The first error assigned is the overruling of the demurrer to plaintiff's declaration. It is claimed that the declaration is illogical, ungrammatical and unintelligible, and does not specify any act of negligence on the part of the defendants causing injury to the plaintiff, and that its allegations are too general and not specific and certain enough to be understood or to give notice to the defendants of the specific acts of negligence of defendants causing injury to the plaintiff. The declaration alleges that the defendants were the owners and operators of a certain telephone line with all of its posts, boxes, insulators and wires, extending and running from the town of Petersburg in the county of Grant to the town of Franklin in the county of Pendleton; that said telephone line passed across and along the public road running between said points; that said road was a public highway and had been for more than twenty-five years then last past, and had been continuously used and traveled as a public road and highway by the citizens of said counties as well as by other persons for all that time; that the said defendants being the owners and operators of said telephone line for a long time had repaired, maintained, supported and amended said posts, insulators, and wire belonging to said line and of right ought to have maintained, repaired, supported and amended, and that said defendants during all the time of their ownership and operation of said telephone line ought to have repaired, maintained, supported and amended the said posts and insulators and wire of said telephone line as often as needed or occasion had been or required; that citizens of said county and other persons going and traveling on said public road and highway might not through the insufficiency of said posts, insulators, wires and the failure to repair, maintain, support and amend the same be injured and damaged. "Yet, the said defendants, well knowing the premises, aforesaid, on the 12th of January, 1900, in the night time, in the county of Grant, through the insufficiencies and defect of

the said posts, insulators, and wire of and belonging to the said defendants, and through the failure of the said defendants, to repair, maintain, support and amend the said posts, insulators and wire, which ought to have been provided, maintained, repaired, supported and amended by the defendants, as this plaintiff was passing over and traveling on said public road and highway, as he had a right to do, at or near the high ground, in said public highway, beyond the residence of Seymour Judy, about one mile southwest of the town of Petersburg and while he was riding on horseback, at a dogtrotting gait, his horse came in contact with said wire belonging to said telephone line, which said wire was stretched across said highway, near the ground, through the carelessness and negligence of the defendants, and was not seen by the plaintiff, whereby plaintiff's horse became entangled in said wire and fell, causing the plaintiff to be thrown over said horse's head, violently to the ground, and thereby breaking the fifth and sixth ribs of the plaintiff on his left side, severely bruising his left shoulder, and causing permanent injury to his kidneys, as well as divers other injuries about his side, back, in the region of the kidneys and other parts of his person, producing acute vomiting, and hemorrhages, causing bloody discharge with the urine, continuing until the present time, said discharges containing blood, mucus, puss, albumen and tube-casts, as well as divers other and permanent injuries." In *Snyder* v. *Electrical Co.,* 43 W. Va. 661, citing *Clark* v. *Railroad Co.,* 39 W. Va. 732, (20 S. E. 696), the rule is laid down "that a declaration in tort must have requisite definiteness to inform the defendant of the nature of the cause of action and the particular act or omission constituting the tort." And in *Poling* v. *Railroad Co.,* 38 W. Va. 645, (18 S. E. 782), it is held that a declaration for negligence, "Is good, if it contains the substantial elements of a cause of action, the duty violated, the breach thereof properly averred with such matters as are necessary to render the cause of action intelligible, so that judgment according to law and the very right of the case can be given." These statements are pronounced good law in the opinion in *Snyder* v. *Electrical Co.,* cited; citing Hogg's Pleading and Forms, sec. 140. The declaration in case at bar sufficiently alleges the duty of defendants to keep in good repair and condition the telephone line and their duty to repair, maintain, support and amend proper posts, in-

sulators and wire, and alleges that the "Wire was stretched across said highway near the ground through carelessness and negligence of the defendants and was not seen by the plaintiff." Yet it does not affirmatively allege that by reason of such failure to perform the duty thus alleged and as a result thereof, and of the negligence of the defendants the injuries complained of were inflicted. Plaintiff in error cites from the opinion in *Snyder* v. *Electrical Co.*, "You must aver the duty and aver the existence of presence of negligence in its performance and specify the act working damage, but need not detail all the evidential facts of negligence. You must tell the defendant even under this general rule that he negligently did a specific act doing harm. In other words you may say that the defendant did or did not do so and so, without detail as to the mere negligence, but you must state the acts that are the basis of the liability," and it should appear from the allegations that by reason of such acts the injuries resulted. As the cause will have to be remanded for a new trial it is thought the declaration should be made more specific in this particular. The second assignment is that the court erred in refusing the defendant's motion for a continuance on the affidavit and amended affidavit of W. C. Smith, as set out in bill of exceptions number one. This motion was pressed on account of the absence of Dr. Fred. Moomau, who it was claimed was a material witness for the defendants. The affidavit of Smith was to the effect that the defendants had used due diligence to procure the attendance of the witness; that the testimony said witness was expected to give was expert testimony based on the evidence of the plaintiff and his witnesses relating to the injuries claimed to be sustained by plaintiff and to give evidence as a physician, expert and otherwise, tending to prove that plaintiff was not injured in the manner claimed. It is shown in the bill of exceptions that Moomau lived about 30 miles from the court. The court was adjourned over until the next day to give defendants an opportunity to get said witness and if they requested it a summons to be issued; that this statement was made on the 14th day of November in ample time to send a summons on that day to Moomau's house; that the summons was not asked for and the court having adjourned the trial until the next day and said witness not being in attendance the defendants renewed their motion for a continuance on the ground of his absence and filed

an amended affidavit to said Smith's affidavit, which amended affidavit stated that defendants and their attorneys had endeavored to procure the attendance of Dr. Moomau by sending a telephone message to him at Franklin, the place of his residence, about 30 miles distant from the court; that affiant believed that said message was received by the witness, but the witness was not in attendance, nor could anything be heard directly from him; that affiant was informed that Moomau was a very important witness because he had a reputation of being an able physician and would be able to give important testimony and material evidence for the defendants and affiant desired said witness to be present when the plaintiff testified in the case and to hear the plaintiff's evidence as to the way he was injured and the extent and permanency thereof, and affiant expected to prove by said witness as an expert, that the injuries were not as serious and permanent as claimed by plaintiff; that defendant's counsel had talked with witness and advised that said witness was very important and his evidence material on said trial and they could not safely go to trial without the evidence of said witness, and that he could not procure the evidence of another expert physician to take his place or whose evidence would supply the evidence said Moomau was expected to give, and the court overruled the motion for continuance and further certified that the absent witness appeared on the 15th of November, after the trial began and after plaintiff had been examined as a witness and the plaintiff's witness, Dr. Gamble and Dr. Grove had been examined on behalf of plaintiff and that said Moomau was examined on behalf of defendants. The absent witness was one of the defendants in the cause and it is not claimed that he had been summoned or that a summons had been issued for him requiring his appearance. It is a settled rule in this Court that the granting or refusing a continuance of a cause is within the sound discretion of the trial court, and that this Court will not reverse the judgment or decree of the inferior court for such reason unless its action was plainly erroneous. See *Buster* v. *Holland,* 20 W. Va. 510. In *Wood* v. *Young,* 4 Cranch 237, it is held: "The granting or refusing a continuance is merely a matter of form and discretion and that the court above cannot look into the merits of the question whether the court below ought to have granted the continuance

of the cause." *Rook* v. *Nancy,* 4 Me. 157; *Hewitt* v. *The Commonwealth,* 17 Grat. 627; *Riddle* v. *McGinnis,* 22 W. Va. 253; *Harmon* v. *Howe,* 27 Grat. 629; *Betsall* v. *State,* 11 W. Va. 726; *Marmet Co.* v. *Archibald,* 37 W. Va. 783; *State* v. *Lane,* 44 W. Va. 730; *Empire Coal and Coke Co.* v. *Hull Coal and Coke Co.,* 51 W. Va. 474. (41 S. E. 917). It does not appear from the record that the court abused its discretion in refusing the continuance in this case. The third assignment of error is in allowing interest on the amount of the judgment from the date of the verdict, the 17th of November, 1900, instead of the date of the judgment which was the 22d day of March, 1901. This is error because contrary to the statute; see section 18, chapter 131, Code; also *Talbott* v. *Railroad Co.,* 42 W. Va. 560. (Syl pt. 3). The fourth assignment in refusing to arrest the judgment on the verdict of the jury, because said declaration was insufficient in law, is disposed of in the treatment of the first assignment.

The sixth assignment is in not granting defendants a new trial upon the evidence and affidavits of Dr. T. J. Grove and George Bean, as set out in defendants' bill of exceptions No. 3, and in refusing to consider the facts set out in said affidavits in support of the motion. The affidavit of Grove was to the effect that since the trial of the cause in which he had been a witness he had been associated with the plaintiff in the practice of medicine and he had had several conversations with him concerning his physical condition and the injury which he claimed to have received to one of his kidneys by being thrown from horse, as testified to by him at the trial; that he had examined the urine of the plaintiff in December, following the trial, and found a slight amount of some kind of discoloring matter causing it to have a reddish color before boiling; that said urine was evacuated after plaintiff had been out about the stable about one-half hour where he had gone after affiant spoke to him about testing his urine; that upon another occasion afterwards, probably about the latter part of January, affiant again tested plaintiff's urine, evacuated in his presence and found it free from any deposit and in good condition and remarked to plaintiff that he was well; plaintiff then said he felt a great deal better, he rested well, he had a good appetite and was improving. Affiant stated that plaintiff had since the trial been traveling over the country visiting

patients wherever called and he had made several trips on the face
of the Allegheny Mountain and made these trips and visits both
night and day and judging from the appearance of plaintiff and
from what affiant had seen he did not believe he is now suffering
from any serious injury of the kidneys; that plaintiff had re-
cently gone on a trip in a buggy and was gone about ten days
and told affiant before starting that he was going to his father's
at Capon Springs in Hampshire county, and that he would prob-
ably go to Winchester, Virginia.    George Bean in his affidavit
stated that he had frequently seen plaintiff since November, he
had been in his presence and conversed with him on frequent
occasions; that judging from his appearance, actions and conver-
sations he was in good health and not suffering from any seroius
disease or injury; that he had been visiting patients and travel-
ing about both at night and day time and said that about ten
days ago had started on a trip, traveling in a buggy from which
he returned the day before the affidavit was made and that he
had his usual appearance when affiant saw him on the morning
of making his affidavit, the 20th of March, 1901.    Plaintiff ob-
jected to the filing of the affidavits and their consideration on
the motion, and pending the consideration plaintiff was permitted
to summon into court said affiants for cross-examination.    The
court sustained the objection and refused to consider the affi-
davits of the evidence of the witnesses on cross-examination, to
which ruling of the court defendants excepted.    Plaintiffs in
error contend that the court should have considered these affi-
davits and evidence, because plaintiff had pushed his case to a
speedy trial claiming permanent injury, and that the affidavits
tended to show that he had recovered from his injuries after
the trial and before the judgment was entered.    There was no
newly discovered evidence, and evidence of the same nature as
contained in the affidavits in relation to the work of plaintiff in
visiting his patients, etc., was given on the trial.    The court did
not err in refusing to consider said affidavits and cross-examina-
tion on the motion for a new trial.    The seventh assignment that
the court erred in refusing to grant defendants a new trial, be-
cause the verdict of the jury was not supported by the evidence
as set out in bill of exceptions No. 2, as said verdict was contrary
to law and the evidence, need not be noticed as the case must be

remanded for a new trial, any comment on the testimony would not be proper.

The 8, 9, 10, 11, 16 and 17 assignments are that the court erred in permitting improper testimony to be offered and questions asked as set out in bills of exceptions Nos. 4, 5, 6, 7, 12 and 13 respectively. In bill of exceptions No 4 plaintiff was permitted to be asked over the objection of defendants what expense was incurred by him in going to Baltimore for examination and treatment, to which plaintiff answered as follows: "I went from here to Winchester in my own buggy, the railroad fare for the round trip from Winchester to Baltimore was $7. I was with my brother-in-law while there. I went to see Dr. Tiffany to see if it would be necessary to take out my kidney." And further testified that said visit was made after the suit was brought. I am unable to see how this could prejudice the defendants. It showed that plaintiff was doing what he could to be cured and at the same time discloses the fact that he was able to travel through the country in a buggy, notwithstanding his injuries. It is claimed by plaintiffs in error that "The jury may have included a large amount for the time and expenses for this trip." The fact is there is no testimony as to any expenses on that trip outside of $7 railroad fare. There is no evidence that Dr. Tiffany charged anything, or that plaintiff claimed anything for time or expenses. Bill of exceptions No. 5 goes to the testimony of Dr. H. M. Gamble, who stated that he was a physician, residing at Moorefield; that he graduated in 1861, and had been since that time in active practice; that he had a microscope and adjuncts and had examined the urine of the plaintiff; first made an examination in February, 1900; that the urine was putrid and offensive and without there being any other evidence that the urine he examined and tested was voided by the plaintiff except the plaintiff's own statement, and witness was asked by plaintiff's counsel his opinion of the character of the wound or injury to the plaintiff and answered that he recollected of giving his opinion to plaintiff, that he was suffering from a laceration of the kidney which evidence was permitted to go to the jury over the objection of defendants; and bill of exceptions No. 6 sets forth that as the plaintiff had testified in the case on his own behalf, Dr. Gamble, a witness on behalf of the plaintiff, after he had testified that it was very difficult to

tell whether the injury to plaintiff's kidney was a temporary or permanent injury and that it was a serious injury, but that the witness could not tell how the injury came. The plaintiff's counsel asked the witness "How could the laceration of the kidney indicated by your examination of Dr. Hannum's urine have been produced?" and was permitted to answer over the objections of the defendants, "It might have been produced by any sufficient force to produce such a laceration." In *Payne* v. *Grant,* 81 Va. 164, it is held: "Error in giving or refusing to give certain instructions or in admitting or refusing to admit certain evidence affords no ground for reversing a judgment when it is evident that the appellant could not have been injured thereby." And cites *Railroad Co.* v. *Rogers,* 76 Va. 443; and *Harmon* v. *Lynchburg,* 33 Grat. 43.

Bill of exceptions No. 7 is in allowing the witness, Blacksmith Feaster, to testify as to the condition of the horse's foot, who says that the horse was brought over to him by the boy, Walter Racy for him to examine, and that he found a cut on the left foot just above the hoof, it was a sore place on the foot and looked as if it had been done some time. It was claimed by plaintiff in error that the description of the wound on the horse's foot by Feaster, was in a different place from the one mentioned by the witness, Racy, who examined the horse's foot the next morning after the injury. Feaster says it was between the hair and the hoof on the left side of the left foot, while Racy says the cut was on the left foot above the hoof, while the cut was older and had begun to heal when Feaster examined it. His testimony corroborates Racy's, as to where it was located. The court did not err in admitting the testimony of Feaster. The 12th assignment is that the court erred in refusing to permit the defendants to prove by the witness, W. C. Smith, and other witnesses, the facts and circumstances relating to the telephone line and the wires and the impossibility of plaintiff being injured thereby, as claimed by him, as set out in bill of exceptions No. 8. Defendants offered to prove by said Smith and other witnesses that they had gone to the place in the road where the accident occurred in the month of June, 1900, about six months after the occurrence and upon examination to show that the wire in the condition as it was then would not when removed from pole No. 2 have come down in the middle of the road so

that the horse's feet would become entangled in it as stated by plaintiff, and that as fastened. on pole No. 1, just above the large elm and on No. 3, next to Petersburg and not fastened on pole No. 2 between poles 1 and 3 the said wire as then fastened on poles Nos. 1 and 3 would not come down in the road low enough at any place near the middle of the road to catch a horse's foot just above the hoof so as to throw the horse down, and that said telephone wire would not lie on the ground near the middle of the road at the point where the plaintiff claimed his horse's foot was caught in the wire; but that said wire would lie in the ditch along the side of the road, owing to the location and situation of the road and of said poles and wire, and offered to prove by said witness that from the location of said wire and the situation of the said poles and the contour of the ground at and near the point where plaintiff claimed to have been injured, that the plaintiff's horse's foot could not have caught in the wire as plaintiff claimed, as it was admitted that the wire was running along the road in the same direction the horse was going.   Plaintiff objected to the introduction of such testimony and the court refused to allow said witness to so testify unless and until, it was first shown that said telephone line, poles, wires and insulators at said point were in the same condition when said examinations were made as they were when the alleged injury was done; that defendants then introduced Edward Lewis to testify that a short time after plaintiff claimed to have been injured and before said examination was made by Smith and others he had come over the line for the purpose of repairing it and had stretched the wire and found the wire fastened to pole No. 1 by a loop of wire a foot to eighteen inches in length and it would admit of the telephone wire being a foot to eighteen inches lower down from the top of the pole than it was when the witness, Smith and others went and examined it. Lewis further testified that when he went to repair the telephone line at that point he unfastened the wire at pole No. 3 and stretched the wire as testified by him.   The defendant then again offered to prove by Smith and other witnesses the facts as to the examination made by them in June, and the result of said examination, so as to establish the fact that said wire could not have been stretched across the road in the manner stated in plaintiff's declaration so as to have caught the horse's

foot as claimed in plaintiff's evidence. In January, when the injury occurred, the wire was loosed at three poles, 1, 2 and 3. In June the wire had been tightened by Lewis, as tight as he could make it with his hands and fastened to the insulators on the said three poles and Smith unfastened the wire from one pole and it was proposed to prove by him the condition of the wire with it being unfastened from one pole only. The court did not err in refusing to allow the witness to testify as to the condition of the wire in June.

The 16th and 17th assignments as to the admission of testimony is to the condition of the wire in the fall of 1899, before the injury occurring in January, 1900, as set out in bills of exceptions Nos. 12 and 13. Witness Ross Shobe testified that on the 7th of October, 1899, he saw the wire across the road lying in the ditch and saw it hanging on the bushes, afterwards that it caught his wagon standard; one day when he was going to town it was hanging on the bushes. Luke Weese testified as set out in bill of exceptions No. 13, that he had noticed the telephone wire several times in the fall of 1899 at one time when he was riding he got off and put said wire on the bushes and when he was afoot he put it up. Evidence to prove the condition of the wire months prior to the time of the injury was improper and should not have been admitted. *Hubbard* v. *Railroad Co.,* 59 Ia. 582; *Temperance Hall* v. *Giles,* 33 N. J. Law, (4 Vroom) 260; *Hollands* v. *Dorchester,* 6 Cushing (Mass.) 396. The thirteenth assignment is that the court erred in giving plaintiff's instructions Nos. 1, 2 and 3, as set out in bill of exceptions No. 9. Instructions Nos. 1 and 2 set out in said bill of exceptions are not specially attacked in their brief by plaintiffs in error and are identical with instructions given in case of *Schwartz* v. *Shull,* 45 W. Va. 405, where it is said, "they properly propounded the law and were rightly given." The third instruction set out in said bill of exceptions is as follows: "The court instructs the jury, that the defendants, in erecting and maintaining the telephone line mentioned in the declaration, were bound to place, support, and maintain its wires by good, reliable and efficient means and appliances, so as not, in any way, to interfere with the use as a public highway of the road leading from the town of Petersburg in Grant County to the town of Franklin in Pendleton County, and if said defendants failed to provide

good, reliable and efficient means and appliances to support and maintain said wire, and by such failure it was stretched across said highway, near the ground, and interfered with the plaintiff, Hannum, in the use of said highway as a public highway, then they are guilty of negligence."

It is insisted by plaintiffs in error that there was no averment in the declaration that the defendants failed to provide good and reliable and efficient means and appliances to support and maintain said wire, nor does it aver that by such failure the wire was stretched across said highway near the road and interfered with plaintiff in the use of the road. A careful inspection of the declaration will show that the averments in this regard are sufficient; it says that "Through the insufficiencies and defects of the said posts, insulators and wire of and belonging to the said defendants, and through the failure of the said defendants to repair, maintain and amend the said posts, insulators, and wire which ought to have been provided, maintained, repaired, supported and amended by the defendants." It is then averred that the wire was stretched across said highway near the ground through the negligence and carelessness of defendants. It is insisted that the instruction is incomplete in that it does not tell the jury that they must find that the negligence of the defendants was the cause and the proximate cause of the injury, and cite *Storrs* v. *Feick,* 24 W. Va. 606, (Syl. pt. 2), where it is held: 'It is error for the court, in giving instructions to the jury, to single out certain facts and instruct them that, if they are true, they must find for either party in accordance with such facts, when there are other facts in the cause bearing on the subject tending to establish a different conclusion," and *Riley* v. *Railroad* Co., 27 W. Va. 245; *McMechen* v. *McMechen,* 17 W. Va. 683; *Hawker* v. *Railroad Co.,* 15 W. Va. 628; 2 Thompson on Trials sec. 1663, 4, 5 & 6. In the last section mentioned the rule is laid down: "The question of negligence is said to be for the jury when there is a substantial doubt as to the facts or as to the inferences to be drawn from them, and it is for the court only when the facts are undisputed and the inference of negligence is clear." The instruction does not direct the jury to find for the plaintiff in the event of finding certain facts to exist, but only instructs them as to the duties incumbent upon the defendants to the public in maintaining

their telephone line and that if they failed to perform such duties they were negligent, and this was only one circumstance to be considered; the instruction was proper. The 14th assignment is that the court erred in refusing to grant defendants instructions Nos. 1, 4, 6 and 8, as set out in bill of exceptions No. 10, and in giving on its own motion instruction No. 5, in lieu of said No. 6, as asked for. Nos. 1, 4, 6 and 8 are as follows: (1) "The court instructs the jury that unless the jury believes from the evidence that the plaintiff was injured in the manner and by the means complained of in the declaration, and that such injury was the direct result of the denfendants negligence, and not for any want of any proper care and caution on the part of the plaintiff then the jury must find for the defendant." (4) "The court instructs the jury that if they believe that the witness, W. H. Hannum, testified falsely as to any material matter in issue in the trial of this case, they are at liberty to disregard all that such witness testified to." (6) "The court instructs the jury that, even if they find that the plaintiff was injured by the negligence of the defendants as alleged in his declaration, that then in ascertaining the amount plaintiff is entitled to recover, they have a right to consider whether the plaintiff is entitled to recover, they have a right to consider whether the plaintiff exercised proper care and medical treatment of himself after receiving the injury complained of, and if the jury further believe that the injury, if any, received by the plaintiff was aggravated by his lack of proper care and caution on the part of the plaintiff, then plaintiff is not entitled to recover anything for such aggravated injury." (8) "The court instructs the jury that even if they believe from the evidence that the defendants were guilty of negligence in not keeping the wire mentioned in the evidence securely fastened on the poles and that such negligence was the proximate cause of the plaintiff's injury complained of, yet if the jury believe from the evidence that the plaintiff might by the use of reasonable care and caution on his part have avoided the effect of the defendants' negligence then he was bound to do so; and if the jury believe from the evidence that the plaintiff's want of proper care and caution directly contributed to the plaintiff's injury, then they must find a verdict for the defendants." There was no error in refusing No. 1, as the court gave the jury at the in-

stance of the defendants the following instruction: "The court instructs the jury that before they can find a verdict for the plaintiff they must believe from the evidence that the plaintiff was injured in the manner and by the means set forth in plaintiff's declaration." The question of contributory negligence is not involved in the case as the evidence shows none. As to instruction No. 6, it should have been given as requested, as it properly propounds the law. There is evidence tending to show that plaintiff's conduct after his kidney was lacerated, as claimed, was such as to aggravate the injury and it was proper for the jury to take into account in ascertaining the damages, the conduct of the plaintiff in aggravating his injury and should not allow any damages for such aggravation. Second Thompson on Trials sec. 1723, and authorities there cited. The instruction No. 5 substituted by the court for No. 6, is as follows: "The court instructs the jury that even if they find the plaintiff was injured by the negligence of the defendants as alleged in the declaration, in ascertaining the amount plaintiff is entitled to recover they have a right to consider whether the plaintiff exercised proper and reasonable care and treatment on himself after receiving the injury complained of." This instruction may be intended to cover the same ground as that asked for by the defendant yet it fails to do so, while the jury was told that they have a right to consider in ascertaining the amount plaintiff is entitled to recover whether the plaintiff exercised proper and reasonable care and treatment of himself after receiving the injury, yet they were not directly told as in the instruction asked by the defendants, that plaintiff is not entitled to recover anything for such aggravated injury. It was entirely proper that this matter of recovery for aggravated injury, by instruction should be made plain to the jury and the defendants were entitled to have the instruction in their own language, if proper to be given. Instruction No. 8 was properly refused for the reason that the question of contributory negligence is not involved in the case and as to the other part of the instruction it was fully covered by other instructions given for defendants. Instruction No. 4 should have been given; it is in effect same as point 4, in *Perry's Case*, 41 W. Va. 641. The fifteenth assignment is that the court erred in granting upon its own motion as set forth in bill of exceptions No. 11, the instruction as herein-

after stated and after the court had acted on instructions to the
jury, which granting and refusing to grant defendants' instruc-
tion No. 4 as set forth in bill of exceptions No. 10, and after the
plaintiff's counsel had made his opening argument before the
jury, and after one of the defendant's counsel had made his
argument before the jury, and while another of defendant's coun-
sel was making his argument to the jury, and while calling the
attention of the jury to statements made by plaintiff, as a wit-
ness in his own behalf, and which were contradicted and shown,
as claimed by the counsel, by statements of other witnesses, viz.:
Dr. T. J. Groves and Walter Racy, and others and was so call-
ing the attention of the jury to the facts and circumstances
shown in the case, which tended to show that plaintiff had testi-
fied falsely as to material matters and facts in the case, the court
of its own motion, and without being requested to do so by the
defendants, gave the following instruction to the jury: "The
court instructs the jury that if they believe from the evidence
that the only evidence tending to prove that the injury com-
plained of by plaintiff was the result of the negligence of de-
fendants, is the testimony of plaintiff and that his testimony
on any material point is untrue, then the jury is at liberty to
disregard his whole testimony." To the action of the court in
giving said instruction to the jury and giving it at the time it
was given after the court had refused to grant said defendants'
instruction No. 4, defendants excepted. At the instance of the
defendants the court had granted another instruction for defend-
ants in these words: "The court instructs the jury that although
a witness may not be contradicted in the statements that he
made, yet the jury are the judges from the facts and circum-
stances shown of the credit that they should give to such wit-
ness." It is insisted by plaintiffs in error that the said instruc-
tion given by the court on its own motion not only failed to
properly supply the place of defendants' No. 4, as set out in
bill of exceptions No. 10, but destroyed the effect of the instruc-
tion just mentioned, which was given at the instance of de-
fendants, as without the instruction given by the court of its
own motion the jury might have determined that by reason of
said last instruction given at the instance of defendants the
plaintiff's testimony was entitled to but little weight, but that
the instruction granted by the court on its own motion required

the jury to give full credit to all of plaintiff's personal testimony, as soon as they were convinced that there was other evidence tending to show the injury complained of, and there being some evidence of this kind it gave full credit to all the testimony given by plaintiff as a witness and utterly destroyed said last instruction given at the instance of defendants. Under the circumstances of the case as set out in bill of exceptions No. 11, it was error in the court, while the argument was proceeding and the testimony of the plaintiff was being discussed by defendant's counsel, to inject into the case on its own motion the intsruction complained of. The principal objection to the instruction is the time and circumstances under which it was given. The jury might possibly take the view of the instruction insisted on by the defendants, as under the instruction the jury were at liberty to disregard the whole testimony of plaintiff, if they believed his testimony on any material point was untrue, only in case that his was the only evidence which tended to prove that the injury complained of by plaintiff was the result of negligence of defendants, when in fact there was corroborating testimony to that effect.

For the reasons herein given the judgment will be reversed, the verdict set aside and the cause remanded to the circuit court of Grant County for a new trial.

*Reversed.*